658 So.2d 683 (1995)
STATE of Louisiana
v.
Bartholomew CROSS.
No. 93-KA-1189.
Supreme Court of Louisiana.
June 30, 1995.
John Francis LaVern, Walter Marshall Sanchez, Lake Charles, Clive Adrian Stafford Smith, Elizabeth Barry Daniel, New Orleans, David J. Utter, pro hac vice, for applicant.
Richard P. Ieyoub, Atty. Gen., Robert "Rick" Bryant, Dist. Atty., Paul Peter Reggie, *684 Frederick Wayne Frey, Lake Charles, for respondent.
MARCUS, Justice.[*]
Bartholomew Cross was indicted by the grand jury for the first degree murder of Curley Williams Hanchett, in violation of La. R.S. 14:30. After trial by jury, defendant was found guilty as charged. A sentencing hearing was conducted before the same jury that determined the issue of guilt. The jury unanimously recommended that a sentence of death be imposed on defendant. The trial judge sentenced defendant to death in accordance with the recommendation of the jury.
On appeal, defendant relies on fourteen assignments of error for the reversal of his conviction and sentence. Finding reversible error in the assignment relating to the selection of jurors, in particular, the failure of the trial judge to grant the defendant's challenge for cause of prospective juror Gilford Warner, we reverse defendant's conviction and sentence and remand the case to the district court for a new trial, pretermitting discussion of defendant's other assigned errors.

FACTS
The victim, Curley Williams Hanchett, was an algebra teacher at Sulphur High School in Lake Charles, Louisiana. On the evening of October 13, 1991, he left Houston, Texas about 8:30 p.m. after visiting with relatives there and was returning home to Lake Charles. Hanchett was driving a silver/gray Ford Taurus. His body was discovered in a wooded area off Fitzenreiter Road in Lake Charles about 10:30 a.m. the next morning bearing no identification. An investigating officer made a tentative identification of Hanchett, who was his neighbor. The identification was verified by the facts that Hanchett's wife had called the Lake Charles Police Department earlier that morning to report her husband missing and that he had not shown up for work that morning.
That same morning a vehicle had been reported abandoned by George Hunter in front of his rooming house on North Simmons Street in Lake Charles. The vehicle was subsequently identified as that belonging to Hanchett. Hunter told the officers that he noticed the vehicle in the early morning hours of October 14th when a person named Bartholomew Cross, who was staying at his rooming house, rang the doorbell and asked to come in. Hunter would not let him in because he was accompanied by a female companion. Later the next morning Hunter found Cross alone on the steps of his rooming house asleep and Hunter again noticed the vehicle was parked across the street. Hunter testified that Cross went in to his room and went to sleep. Hunter told the officers that Cross had left the rooming house the evening before and was in possession of a revolver.
After the arrival of other police units and with the consent of Hunter, the officers entered the rooming house and arrested Cross and seized several items belonging to Hanchett including Hanchett's watch which was on Cross' wrist and Hanchett's wallet. The keys to Hanchett's vehicle and a revolver were found beneath the residence to the rear of the front steps. Cross was taken to the police station for questioning where he gave a statement that he was on Pear Street in Lake Charles when he flagged down a silver grayish car for a ride. Once he got into the car, he pulled out a gun and made Hanchett drive to Fitzenreiter Road and tried to rob him. Hanchett resisted the robbery which resulted in a fight. Cross then shot Hanchett. The testimony of several witnesses at trial revealed that Cross was in possession of a revolver and that he was driving around in a silver gray vehicle in the early morning hours of October 14, 1991.
The autopsy of Hanchett revealed two bullet wounds to the chest and some additional entry and exit wounds in the right hand and left forearm. The gunshot wounds to the chest were the cause of Hanchett's death. A firearms expert testified that the projectiles recovered from Hanchett's body were fired from the revolver identified as belonging to Cross.

*685 ASSIGNMENT OF ERROR II (VOIR DIRE)

Defendant contends that the trial judge erred in denying his challenge for cause of prospective juror, Gilford Warner. He argues that he was denied his constitutional right to his full peremptory challenges when he was required to exercise one of his twelve challenges to excuse Warner as a potential juror.
At the commencement of the voir dire examination of six prospective jury members, the jurors were asked if they knew the victim, Curley Hanchett, and Warner answered affirmatively. Warner stated that Hanchett had been his biology teacher in the tenth grade. Upon further questioning by the trial judge about this relationship, Warner testified that Hanchett "helped me out a lot." Warner also indicated that he had heard about the victim's death on the news about two weeks before. When the trial judge asked Warner if he had formed any conclusions or opinions based upon what he knew or had heard, Warner replied, "I got my own opinion. I think you know, an eye for an eye." When further asked if he would be predisposed toward the state because he knew the victim and the victim had been his teacher, Warner answered, "Probably so." When questioned further, Warner stated, "Well, like I said he wasLike I say I was in the tenth grade and I was having hard times and he helped me out, you know. More like a friend." The trial judge inquired whether it would be difficult for him to be fair and impartial because of the relationship and Warner replied, "I can't say without evidence." At the end of this colloquy when the trial judge asked Warner once again if he could set aside his feelings and be fair and impartial, Warner responded, "I can't say. I don't know."
When Warner was subsequently questioned by the prosecuting attorney, Warner admitted that thirteen years had passed since he had been in Hanchett's tenth grade class and that he had not seen or spoken to the victim since that time. When asked whether he could set aside his friendship and knowledge and make a decision based solely upon what he would hear from the witness stand and whether he could return a verdict of not guilty, he replied affirmatively.
Last, defense counsel questioned Warner about his relationship with the victim. When asked whether Hanchett was his favorite teacher, Warner responded that "he was real understanding, you know. And I would say he influenced me a lot, yeah." When defense counsel asked if Hanchett was a teacher that had a significant impact on him, Warner responded, "Sure." Yet Warner later responded to defense counsel that he would listen to the judge's instructions, if selected, and make every effort to decide the case according to the law and the evidence.
The prosecutor next questioned Warner about the penalty phase of trial. Warner responded that he could impose either life imprisonment or the death penalty. He answered affirmatively that he could follow the judge's instructions on the law and could be fair to the defendant and the state.
All of the jurors were questioned about their opinion in regard to depression as potential mitigating evidence. Warner responded that he would not consider depression to be mitigation. He further explained, "Life's tough you know. We've all been dealt tough cards and you got to deal with them. And we live through them day to day, and I think depression is one of them." However, when defense counsel further explained to him that depression would be used as a mitigating factor towards determining an appropriate punishment, Warner responded that without the facts, he did not know but he would probably have some difficulty.
Toward the end of the voir dire, defense counsel explained that the defense has no obligation to put defendant on the stand or to put any evidence on. When the panel was asked if anyone had a problem with the fact that they may not hear from defendant during the course of the trial and whether that might impact on their ability to serve on the jury, the following colloquy occurred between defense counsel and Warner:
BY MR. SANCHEZ:
Q Mr. Warner?
A I thinkI think in any case, should be spoke up, you know, through hisself you *686 know. And if I was the prosecuting attorney I'd think I'd want to direct questions to him, you know.
I, myself, would want, you know, to ask the ask [sic] questions directly to him.
Q And if I as Bartholomew's lawyer make the decision and he doesn't testify in these proceedings, would that fact impact on your ability to decide the case on the evidence?
Would you stillIn the back of your mind would you feel like there's evidence that you're entitled to that you didn't hear from, that would impact on your decision?
A Yes.
Q And so if he doesn't testify that will that will make it more difficult for you to make your decision based solely on the evidence that you hear?
A Yes.
Q Because you will think that there's some evidence that you want to hear that you didn't.
A Right.
Q And that would have an impact on your ability to sit as a juror in this case, would it not?
A Yes, it would.
...
Q And so, it would be fair to say that you areyou would be predisposed if we decide not to put Bart on, you would be predisposed then to think that if he didn't testify there must [be] something he's hiding.
A Right.
Q You would feel because of that that you didn't get all of the evidence that you were entitled to and that would make you more likely to side or to consider the evidence or to convict based on the fact that he didn't testify?
A It would leave me confused, definitely.
Q And that would be something that would have a direct impact on your ability to be a fair juror in this case, would it not?
A Sure.
Q I appreciate it, Mr. Warner. Pass it over to Mrs. Bishop.
No further questions were asked nor responses elicited from Warner following this colloquy. At the end of the voir dire of the entire panel, defense counsel challenged Warner for cause. The trial judge refused to excuse Warner. Defense counsel objected to the court's ruling. Defendant used one of his peremptory challenges to excuse Warner from the jury panel. Defendant used all of his twelve peremptory challenges.
La. Const. art. I, § 17 guarantees that "[t]he accused shall have the right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. The number of challenges shall be fixed by law." La.Code Crim.P. art. 799 provides the defendant in a death penalty case with twelve peremptory challenges. Therefore, when a defendant uses all of his peremptory challenges, a trial court's erroneous ruling depriving him of one of his peremptory challenges constitutes a substantial violation of his constitutional and statutory rights, requiring reversal of the conviction and sentence. State v. Maxie, 93-2158, p. 15 (La. 4/10/95); 653 So.2d 526; State v. Robertson, 92-2660, (La. 1/14/94); 630 So.2d 1278, 1280; State v. McIntyre, 365 So.2d 1348, 1351 (La. 1978). A defendant must object at the time of the ruling on the refusal to sustain a challenge for cause of a prospective juror. La.Code Crim.P. art. 800. Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and the defendant has exhausted his peremptory challenges. To prove there has been reversible error warranting reversal of the conviction and sentence, defendant need only show (1) the erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges. Robertson, 630 So.2d at 1281; State v. Ross, 623 So.2d 643, 644 (La.1993); State v. Comeaux, 514 So.2d 84, 93 (La.1987). The trial judge is vested with broad discretion in ruling on challenges for cause, and his ruling will be reversed only when a review of the entire voir dire reveals the judge abused his discretion. Robertson, 630 So.2d at 1281; Ross, 623 So.2d at 644. Since defendant exhausted all of his peremptory challenges in this case, we are left only with the task of deciding whether the trial judge erred in *687 denying defendant's challenge for cause of prospective juror Gilford Warner.
La.Code Crim.P. art. 797 provides in pertinent part that the state or the defendant may challenge a juror for cause on the grounds that:
. . . . .
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court;
. . . . .
In the instant case, defendant challenged Warner on several grounds. First, he challenged Warner on the basis of his personal relationship with the victim. Second, he challenged Warner based on his statements that he could not accept the law as given if defendant failed to take the stand in his behalf, that is, he could not give defendant the presumption of innocence. Additionally, defense counsel argued that Warner had a strong leaning toward imposing the death penalty (his comment "an eye for an eye") and he expressed that he would have a problem with considering depression as a mitigating circumstance. We find, for the reasons set forth below, that the trial judge erred in failing to excuse Warner for cause based on Warner's statements that he could not accept the law as given if defendant failed to take the stand in his behalf, that is, that he could not give defendant the presumption of innocence. The failure to excuse Warner on this ground constitutes reversible error. Having found reversible error on this ground, we need not pass on whether the other grounds alleged for challenging Warner's ability to be a fair and impartial juror have merit.
A review of the voir dire of Warner demonstrates a number of instances in which he told the court that if defendant failed to testify it would create an impact on his ability to sit as a juror and prompt him to be predisposed to think that defendant must be hiding something. Warner's final words on the issue came in response to defense counsel's query regarding whether he would be more likely to convict based on defendant's failure to testify. Warner asserted that it would "leave him confused, definitely," and answered affirmatively that it would affect his ability to be a fair juror. There was no effort thereafter made by the court or the prosecution to rehabilitate this juror who had clearly stated his inability to follow the law in this regard. A trial judge's refusal to excuse a prospective juror for cause is not an abuse of discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, where subsequently, on further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and evidence. State v. Welcome, 458 So.2d 1235 (La.1983), cert. denied, 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 152 (1985); State v. Passman, 345 So.2d 874, 880 (La.1977). However, where as here, there has been no attempt to rehabilitate Warner subsequent to his remarks expressing his opinion in this area, the challenge for cause should have been granted.
The Fifth Amendment to the Unites States Constitution and Art. I, § 16 of the Louisiana Constitution protect a defendant from being forced to testify against himself. We have stated that it is an important part of voir dire examination to discover any prospective juror who may have difficulty understanding this right (the presumption of innocence) as well as to discover a juror who may hold it against a defendant who exercises the right. See State v. Lee, 559 So.2d 1310, 1316 (La.1990). Having failed to excuse Warner for cause based on this ground, the trial judge forced defendant to use one of his peremptory challenges. Since defendant *688 used all of his peremptory challenges, the failure of the trial judge to excuse Warner for cause was an abuse of discretion and constitutes reversible error.

DECREE
For the reasons assigned, defendant's conviction and sentence are reversed, and the case is remanded to the district court for a new trial.
CALOGERO, C.J., concurs and assigns reasons.
WATSON, J., dissents and assigns reasons.
CALOGERO, C.J., concurring.
I concur in the majority's opinion because I agree with the disposition reached in this case. However, I also believe that in the interests of judicial economy we should address the trial court's denial of the defendant's motion to suppress, either favorably to the State or to the defendant, since the issue will surely arise again upon retrial. In my opinion this is a serious issue, involving as it does the warrantless arrest of the defendant in his place of abode and the ensuing search of those premises. The questions presented by this issue should out of prudence be addressed at this time. We should not risk the possibility of another appellate reversal and retrial at a later date.
WATSON, Justice, dissenting.
I respectfully dissent. After further consideration and study of this issue, I think the Court should reconsider its holding that prejudice to a criminal defendant may be presumed and reversal of a conviction is required when a challenge for cause is wrongfully denied and all peremptory challenges are exhausted. Excusing a juror peremptorily, who possibly should have been excused for cause, is an unsound reason for reversing an otherwise fair trial. See State v. Maxie, 93-2158 (La. 4/10/95), 653 So.2d 526. I believe the time has come to reconsider a line of cases which includes State v. Ross, 623 So.2d 643 (La.1993), which I authored.
La. Const. art. I, § 17 enumerates the right to challenge jurors peremptorily as a right of a criminal defendant with the number of challenges to be set by statute. A trial judge's erroneous ruling which deprives a defendant of a peremptory challenge constitutes a violation of a constitutional or statutory right. State v. Bourque, 622 So.2d 198, 225 (La.1993), citing State v. McIntyre, 365 So.2d 1348, 1351 (La.1978). Presuming prejudice and requiring reversal of a conviction when this right is violated, however, goes too far.
Under our state constitution, this Court's appellate jurisdiction of criminal matters extends only to questions of law. La. Const. art. 5, § 5(C). Our rules of criminal procedure provide that reversal of a conviction should occur when a constitutional error affects the substantial rights of the accused. LSA-C.Cr.P. art. 921. In addition to the constitutional and statutory parameters established above, this Court has adopted as a supplemental guide the harmless error rule of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), in cases involving only errors of state procedure or state law. See State v. Gibson, 391 So.2d 421, 428 (La.1980). Under Chapman, a reviewing court must determine "whether there is a reasonable possibility that the [error] complained of might have contributed to the conviction." Id., 386 U.S. at 23; 87 S.Ct. at 827. In addition, "the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." Id., 386 U.S. at 24; 87 S.Ct. at 828.
Under this analysis, it is clear that the Court's focus has been wrong. Rather than properly focusing on the impact of the error, the Court focuses only on the fact that error has been made. See Gibson, 391 So.2d at 427. The purpose of the constitutional provision at issue is to ensure a fair trial and to obtain an impartial jury in criminal proceedings. Therefore, the focus of our inquiry should be on whether the criminal defendant obtained an impartial jury and received a fair trial. The mere violation of a right, without more, ignores the basis of the right and renders it meaningless.
*689 Such an analysis is rendered by the federal courts. Louisiana should not go farther than the federal courts. The federal constitution guarantees a criminal defendant the right to an impartial jury through the Sixth and Fourteenth Amendments. Although there is no specific mention of peremptory challenges, their use ensures that an impartial jury is obtained. Thus, they are a means to obtain the constitutionally protected impartial jury. See Ross v. Oklahoma, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). Ross noted as a long-recognized rule that the loss of a peremptory challenge does not violate the federal constitutional right to an impartial jury. "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." Id., 487 U.S. at 88, 108 S.Ct. at 2278. Thus, the federal courts focus on the impact of any error on the fairness of the trial and the impartiality of the jury which actually sits.
In his appeal, Cross complains that prospective juror Gilford Warner should have been excused for cause. He may be correct, but the fact remains that Warner did not serve on his jury. Undoubtedly, had Warner sat on the jury that found Cross guilty and ultimately sentenced Cross to death, the conviction and sentence would have to be overturned.
Cross does not complain that the impanelled jury was not impartial. He does not point to any sitting jurors he would have peremptorily challenged but was prevented from challenging due to exhaustion. Any violation of his constitutional right to peremptorily challenge prospective jurors was harmless beyond a reasonable doubt. None of Cross's substantial rights were affected. A constitutionally valid, impartial jury actually sat and determined Cross's guilt or innocence and determined Cross's sentence. Cross is not entitled to more; his conviction and sentence should not be overturned on this ground.
NOTES
[*] Chief Judge Morris A. Lottinger, Jr., Court of Appeal, First Circuit, sitting by assignment in place of Justice James L. Dennis. Lemmon, J. not on panel. Rule IV, Part 2, § 3.