11 COOKS, Judge.
Defendant, Jimmy Lee Wright, was charged by bill of information with attempted second degree murder, aggravated arson, and aggravated battery. Wright was tried and found guilty of attempted manslaughter, aggravated arson, and second degree battery. Thereafter, the court sentenced him to serve, twenty years concurrently, at hard labor for committing attempted manslaughter, twenty years at hard labor for committing aggravated arson, and five years at hard labor for committing second degree battery. Wright appeals his conviction asserting eight assignments of error. Finding merit in one of these assignments, we reverse Wright’s conviction and sentence and remand the case for a new trial.
BACKGROUND FACTS
The facts reflected in the record and recounted in the light most favorable to the State’s version follows:
During the late afternoon of October 30, 1997, Wright went to Larry Jones’ home in Leesville, Louisiana to smoke “crack” cocaine. While there, a dispute arose between the two men. Wright proceed to hit Jones in the face, knocking him to the floor, then kick him repeatedly. As Jones lay on the floor, Wright burned his ear with a cigarette lighter. Wright then used the lighter to ignite a sofa cushion, | ¿thereby setting Jones’ home on fire. ' Jones was eventually able to flee the burning house. Wright was apprehended several blocks from the house within an hour after report of the fire.
Wright appeals his conviction and sentence, advancing eight assignments of error. In his first assignment of error, Wright alleges several challenges for cause, urged by him during voir dire, were erroneously denied by the trial court. By assignment two, Wright claims the trial court improperly impaneled the jury over two specific Batson objections to the exclusion and composition of the jury. In assignments three through six, Wright contends the court erred in admitting prejudicially graphic pictures of the victim. The final two assignments deal with alleged prosecutorial malfeasance.
After reviewing the record, we conclude the trial court erroneously denied Wright’s for cause challenges to the service of two jurors; thereby prejudicing his right to effective voir dire examination and ultimate selection of a fair and impartial jury. *739 Finding such, we are compelled to reverse his conviction and remand the case for new trial. Because we find reversible error occurred, for this reason, discussion of the remaining assignments are pretermitted.
ASSIGNMENT OF ERROR NO. 1
Wright urges the trial court erred by denying his challenges seeking to excuse: Larry C Brown, Debra Magee Cook, Irby Perkins, Debra Bentaeourt, David Cooley, and Bobbie Woodard for cause. We agree the trial court abused his discretion in denying Wright’s challenges to at least two of the listed jurors.
Legal Requisites
La. Const, art. I, § 17 guarantees “[t]he accused shall have the right to full voir dire examination of prospective jurors and to challenge jurors peremptorily.” La.Code Crim.P. art. 766 provides when a defendant is exposed to death or imprisonment at | shard labor, he must be allotted twelve peremptory challenges. Our State Supreme Court has held, without retreat, when a defendant exhausts all of his peremptory challenges, using one to remove a prospective juror, which the trial court erroneously failed to excuse, a substantial violation of his constitutional and statutory rights has occurred which necessarily require reversal of his conviction and sentence. State v. Cross, 93-1189 (La.6/30/95); 658 So.2d 683; State v. Maxie, 93-2158 (La.4/10/95); 653 So.2d 526; State v. Robertson, 92-2660 (La.1/14/94); 630 So.2d 1278; State v. McIntyre, 365 So.2d 1348 (La.1978). Thus, “[prejudice is presumed when a challenge for cause is erroneously denied by a trial court and the defendant has exhausted all of his peremptory challenges.” Cross, 658 So.2d at 686.
To prove reversible error occurred, defendant is required to show only: “(1) the erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges.” Cross, 658 So.2d at 686; Robertson, 630 So.2d 1278, 1281; State v. Ross, 623 So.2d 643, 644 (La.1993); State v. Comeaux, 514 So.2d 84, 93 (La.1987). The trial judge is vested with broad discretion in ruling on challenges for cause, and his ruling will be reversed only when a review of the entire voir dire reveals the judge abused his discretion. Robertson, 630 So.2d 1278. “A trial judge’s refusal to excuse a prospective juror for cause is not an abuse of discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, where subsequently, on fuRher inquiry or instruction, [the juror] has demonstrated a willingness and ability to decide the ease impartially according to the law and the evidence.” Cross, 658 So.2d at 687. See also State v. Welcome, 458 So.2d 1235 (La.1983), ceR. denied, 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 152; State v. Passman, 345 So.2d 874, 880 (La.1977). In this case, defendant exhausted all of his peremptory challenges. The only question left for our determination on appeal is whether the trial judge erred in denying defendant’s challenges for cause.
|4La.Code Crim.P. art. 797 provides, in pertinent part, the state or the defendant may challenge a juror for cause on the grounds that:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship whether, by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court;
*740 Prospective juror Debra Magee Cook
Cook stated in voir dire her father is Louis Magee, Vernon Parish’s Chief Deputy Sheriff. Cook declared she did not have a problem with reasonable doubt or an accused’s privilege against self-incrimination; and she .was not familiar with any of the officers who investigated the case. We do observe, however, Cook admitted she would have a problem if instructed not to discuss the case with her father because of their close relationship. The pertinent part of the exchange between the state and Cook follows:
Q: I have just one other question, Mrs. Cook. Knowing your background with your father being the chief deputy for many years for Sheriff Howard, is there anything in that background with your father being in law enforcement that would prevent you from being a fair and impartial juror in this case at all?
A: Possibly.
Q: Because he’s in law enforcement?
A: Yes.
Q: Do you have a tendency to believe a police officer more | sthan you would believe someone else simply because of your father being in law enforcement? A: Sometimes, it just depends.
Q: It would depends on the facts of this case. You’re obviously a gfown intelligent person and my question to you would be regardless of that relationship with your father — we all hopefully have a close relationship with our parents, if you were selected as a juror on this case, do you feel you could sit here and listen to the evidence as is admitted from that witness stand — your father’s not involved in this case, he’s not a witness. And base your final decision in this case solely on that evidence? You think you can do that?
A: Yes sir, as long as you don’t have me not talk to him.
Q: Talk to him?
A: To my parents, yeah.
BY MR. CABRA:
Okay, I don’t know if I can control that or not.
By MR. SMITH:
I’m not sure exactly — you don’t — if you were instructed not to discuss this case with your father, that would be a problem?
A: I don’t know, maybe.
Thereafter, defense counsel challenged Cook for cause based on her close relationship with the “second highest executive law enforcement officer in Vernon Parish.” The court denied Wright’s challenge stating: “[tjhat’s her father and she has dinner with them every day but there’s nothing to show — she answered all of the questions correctly.”
It is well settled that a relationship to a law enforcement office does not, of itself, justify a challenge for cause. State v. Lewis, 391 So.2d 1156, 1158 (La.1980); State v. Collins, 546 So.2d 1246, 1253 (La.App. 1 Cir.1989), writ denied, 558 So.2d 599 (La.1990). However, the relationship “must be closely scrutinized.” State v. Chapman, 410 So.2d 689, 696 (La.1981), appeal after remand, 436 So.2d 451 (La.1983). The question presented is whether or not the prospective juror could assess the credibility of each witness independently of his or her relationship with members of law enforcement. Collins, 546 So.2d 1246. Cook was unsure whether she could refrain from discussing the case outside the confínes of the jury room with her father, the Chief Deputy. Though Cook declared she could be fair and impartial, her genuine admissions suggested otherwise. Cook’s frank declaration that “maybe” she would have difficulty maintaining the secrecy of jury deliberations, even if so instructed, speaks loud in this instance: she simply could not guarantee that her promise to remain fair and impartial would not be affected if she “talked to [her father].” The jury was not sequestered in this case throughout the trial. The danger that Cook would come in contact with her father, whom she admitted *741 dining with every evening, was substantially certain to occur during trial. She honestly disclosed that talking to him might affect her ability to judge the case against Wright based solely on the evidence. The trial court’s failure to excuse her for cause was an abuse of discretion.
Prospective juror Irby Perkins
Perkins serves as a corrections officer at the Vernon Parish Correctional Facility. Although he is law enforcement officer, Perkins stated he could be fair and impartial “both to the State of Louisiana and to the defendant.” Nevertheless, because Perkins is “associated with law enforcement duties,” his service on a criminal jury also must be “closely scrutinized.” Chapman, 410 So.2d at 696.
The real question is whether Officer Perkins could have assessed the credibility of each witness independently of his relationship with law enforcement. State v. Wilson, 25,775 (La.App. 2 Cir. 2/23/94); 632 So.2d 861. If bias or prejudice may reasonably be presumed from this association, then such a juror should be excused for cause. Id. In State v. Simmons, 390 So.2d 1317 (La.1980), the Louisiana Supreme |7Court examined whether an actively employed law enforcement officer could be a fair and impartial juror. The Court held it is reasonable to conclude a law enforcement officer’s verdict will be influenced by their employment. Id. Consequently, the Court ruled:
The guarantee of an impartial trial in Article 1, Section 16, of the Louisiana Constitution of 1974 is offended by the presence of a badge-wearing law enforcement officer. Deputy sheriffs have served on Louisiana juries. However, an actively employed criminal deputy sheriff is not a competent juror. Any jurisprudence to the contrary is expressly overruled. (Citations omitted and emphasis ours).
Corrections officers in Vernon Parish are criminal deputy sheriffs. Following the clear mandate of Simmons, we must find the trial court erred in not dismissing Perkins for cause.
DECREE
For the foregoing reasons, the defendant’s conviction is set aside and the case remanded for a new trial.
CONVICTION AND SENTENCE VACATED AND REMANDED.
AMY, J., DISSENTS.