822 So.2d 859 (2002)
STATE of Louisiana,
v.
Denise A. BUSH.
No. 02-KA-0247.
Court of Appeal of Louisiana, Fifth Circuit.
June 26, 2002.
*862 Margaret S. Sollars, Thibodaux, LA, for Denise A. Bush, Defendant-Appellant.
Paul D. Connick, Jr., District Attorney, Parish of Jefferson, State of Louisiana, Terry M. Boudreaux, Churita H. Hansell, Assistant District AttorneysAppellate Counsel, Donald A. Rowan, Jr., Assistant District AttorneyTrial Counsel, Gretna, LA, for State of Louisiana, Plaintiff-Appellee.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
On August 17, 2001, the Jefferson Parish District Attorney's Office filed a bill of information charging defendant, Denise Bush, with possession of cocaine over 28 grams in violation of LSA-R.S. 40:967(F) and felon in possession of a firearm in violation of LSA-R.S. 14:95.1.[1] On August 20, 2001, defendant was arraigned and pled not guilty.
Defendant proceeded to trial on November 6, 2001. After the one-day trial, a unanimous 12-person jury found defendant guilty as charged on both counts. Defendant waived sentencing delays and was immediately sentenced to ten years on each count, to run concurrently, without benefit of parole, probation or suspension of sentence.

Facts
On August 1, 2001 at approximately 6:00 p.m., Deputy Antonio Frere received information that someone was selling crack cocaine from an apartment in a complex located at 608 South Upland in Kenner.[2] After watching the complex for about forty minutes, Deputy Frere went into the building, knocked on the door of Apartment 10, and identified himself as a deputy with the Jefferson Parish Sheriff's Office.
A man, later identified as Beverly Stokes, opened the door. Deputy Frere saw Stokes, who was sitting on the bed immediately inside the apartment, holding a ceramic plate on his knee. Deputy Frere also saw defendant sitting on a chair next to the bed facing Stokes with a "crack pipe" in her right hand. The plate on Stokes' knee held a clear plastic bag with numerous off-white rock-like objects. Deputy Frere also observed, on the bed within both subjects' reach, a clear plastic bag containing a white powdery substance, a .38 revolver, plastic baggies, and an electronic scale commonly used in packaging narcotics.
Frere immediately arrested defendant and Stokes. In the search incidental to defendant's arrest, Deputy Elizabeth Cato found a green plastic bag containing one rock-like substance in defendant's purse and a clear plastic bag with three individually-wrapped, rock-like substances in defendant's bra. The rocks tested positive *863 for approximately 1.71 grams of crack cocaine.
Subsequent tests also revealed the plate that Stokes was holding contained 19.53 grams of cocaine and the clear plastic bag on the bed contained 3.09 grams of cocaine. When the apartment was searched later pursuant to a search warrant, the deputies also found a .22 caliber pistol hidden behind the television and a Rubbermaid container under the covers of the bed that contained 37.4 grams of cocaine.

Discussion
In her brief, defendant raises issues regarding the sufficiency of the evidence and erroneous denial of challenges for cause. When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, such as the erroneous admission of evidence, the reviewing court should first determine the sufficiency of the evidence by considering all of the evidence, including evidence the trial court may have erroneously admitted. State v. Hearold, 603 So.2d 731, 734 (La. 1992); State v. Mayeux, 94-105 (La.App. 5 Cir. 6/28/94), 639 So.2d 828, 834. If the appellate court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id. Therefore, we will first consider the sufficiency of the evidence.
Defendant argues the evidence does not support her conviction of possession of cocaine over 28 grams or her conviction for felon in possession of a firearm because there was no evidence she exercised dominion or control over the drugs or guns found in the apartment. She contends her mere presence in the apartment where the drugs and guns were found was insufficient to show she had constructive possession of the items. Defendant asserts since she only had four rocks of cocaine, or 1.7 grams, on her person, the evidence only supports a conviction for simple possession of cocaine.[3]
In reviewing the sufficiency of the evidence, due process requires the reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record, and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. The actual trier of fact is presumed to have acted rationally until it appears otherwise. State v. Mussall, 523 So.2d 1305 (La.1988).
To support a conviction for possession of cocaine, the State must prove that a defendant knowingly or intentionally possessed the cocaine. La. R.S. 40:967(F); State v. Reyes, 98-424 (La.App. 5 Cir. 12/29/98), 726 So.2d 84, 88, writ denied, 99-1474 (La.10/8/99), 750 So.2d 967. Likewise, to support a conviction for felon in possession of a firearm, the State must prove defendant knowingly possessed the firearm. La. R.S. 14:95.1; State v. Webber, 99-23 (La.App. 5 Cir. 7/27/99), 742 So.2d 952, 955.
*864 The element of possession for both offenses includes both "actual" and "constructive" possession. State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 786, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866; State v. Webber, supra. A person not in physical possession of contraband may have constructive possession when the contraband is under that person's dominion or control. Id.
Guilty knowledge is an essential element of the crime of possession of contraband and such knowledge may be inferred from the circumstances. State v. Reyes, supra. The mere presence of the defendant in the area where the contraband is found, or mere association with a person in possession of the contraband, is insufficient to constitute constructive possession. State v. Reyes, supra at 88. However, proximity to the contraband, or association with the possessor, may establish a prima facie case of possession when colored by other evidence. State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 69, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
A defendant can have constructive possession if he jointly possesses the contraband with a companion and if he willfully and knowingly shares with his companion the right to control the contraband. State v. Hodge, 00-515 (La.App. 4 Cir. 1/17/01), 781 So.2d 575, 580, writ denied, 01-432 (La.1/25/02), 806 So.2d 666. Determination of whether a defendant had constructive possession depends on the circumstances of each case. State v. Cann, 319 So.2d 396, 399-400 (La.1975).
Factors considered in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession include: 1) the defendant's knowledge that illegal drugs were in the area; 2) his relations with the person found to be in actual possession; 3) the defendant's access to the area where the drugs were found; 4) evidence of recent drug use by the defendant; 5) the existence of paraphernalia; and, 6) evidence that the area was frequented by drug users. State v. Quest, 772 So.2d at 786.
In State v. Gentras, 98-1095 (La.App. 5 Cir. 3/30/99), 733 So.2d 113, 118, writ denied, 99-1302 (La.10/15/99), 748 So.2d 464, this Court found defendant to be in constructive possession of drugs found in a motel room where he was present. In Gentras, the police knocked on a motel room door and defendant answered. The police saw a plate with several rocks of crack cocaine protruding from under the bed. In a subsequent search of the room, the police discovered a crack pipe and razor blade. No drugs were found on the defendant and the motel room was registered to another person who testified defendant did not know about the drugs. However, the registered guest testified defendant asked for a "wake-up hit" before entering the motel room. In upholding defendant's conviction for possession of cocaine, this Court noted the jury chose not to believe the testimony of the registered guest of the motel room that defendant had no knowledge of the drugs in the motel room.
In the present case, defendant clearly knew that there were drugs in the room. She was sitting within arms' length of a plate holding more than 19 grams of crack cocaine, a plastic bag with more than three grams of crack cocaine, and a plastic container holding more than 37 grams of cocaine. Further, she was in actual possession of almost two grams of cocaine. Although there was no testimony regarding her relationship with Stokes, defendant's son, who also resides in the building, testified that Stokes had "a lot of ... crack heads going back and forth" from his *865 apartment.[4] When Deputy Frere entered the apartment, defendant was sitting in a chair next to the bed so close to Stokes that they were "knocking knees." On the bed, within reach of both subjects, Deputy Frere saw cocaine, drug paraphernalia, including a razor blade, a scale, clear plastic bags, as well as a .38 revolver.
Based on the factors and jurisprudence discussed above, we find that a rational trier of fact could have found, beyond a reasonable doubt, that defendant exercised dominion and control over the drugs and gun found on the bed. We hold, therefore, that the evidence was sufficient to convict defendant of possession of more than 28 grams of cocaine and possession of a firearm by a convicted felon. Defendant's assignment of error lacks merit.
In her next assignment of error, defendant argues the trial court erred in denying her challenges for cause of three prospective jurors and that her defense was thereby prejudiced. The jurors in question were Brenda Sanderson, Donna McClarren and Rene Veron.
Article 797 of the Louisiana Code of Criminal Procedure, entitled "Challenge for cause," states, in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
* * *
(4) The juror will not accept the law as given to him by the court;
* * *
Further, La.C.Cr.P. art. 401(B) states, in pertinent part, "Notwithstanding any provision in Subsection A, a person may be challenged for cause [for] ... the existence of any other incapacity which satisfies the court that the challenged person is incapable of performing the duties of a juror in the particular action without prejudice to the substantial rights of the challenging party."
The Louisiana Supreme Court has recently reiterated the standard for review of denial of challenges for cause in State v. Anthony, 98-0406 (La.4/11/00), 776 So.2d 376, cert. denied, 531 U.S. 934, 121 S.Ct. 320, 148 L.Ed.2d 258 (2000):
Prejudice is presumed by a trial judge when a challenge for cause is erroneously denied and the defendant has exhausted his peremptory challenges. An erroneous ruling depriving an accused of a peremptory challenge is a substantial violation and constitutes reversible error. A trial court is vested with broad discretion in ruling on challenges for cause, and these rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. A trial judge's refusal to excuse a prospective juror for cause is not an abuse of discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, when, on further inquiry or instruction, the juror `has demonstrated a willingness and ability to decide the case impartially according to the law and evidence.' (Citations omitted). (Emphasis added).
776 So.2d at 391.
The trial court has great discretion in ruling on cause challenges because it "has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questioning." Id. at 392.
In the present case, defendant exhausted her peremptory challenges. Thus, our inquiry is solely whether the trial court *866 abused its discretion by denying defendant's challenges for cause.
Regarding prospective juror Brenda Sanderson, defendant specifically contends that Sanderson was unable to accept defendant's Fifth Amendment right against self-incrimination as evidenced by her responses that she could not understand why a defendant would not want to testify if he were innocent and her comment that she would hold it against the defendant if she did not testify.
In this case, at the beginning of the jury selection process, the trial judge explained to the voir dire panel the concept of a defendant's presumption of innocence and his right not to testify. The trial judge specifically asked whether the panel could accept the right of the defendant not to testify and "not hold it against the defendant should she decide not to testify." The record indicates that the jurors collectively responded in the affirmative. The trial court then asked if anyone had a problem with the defendant's right not to testify, to which there was no response.
Later during voir dire, defense counsel questioned the panel more intensely about a defendant's Fifth Amendment right not to testify. When prospective juror Sanderson was specifically asked if she could think of any reason why a defendant would not take the stand, she replied that she did not know why a defendant would not take the stand if he were innocent.
Defense counsel then explained that the Fifth Amendment of the Constitution gives a defendant the right to remain silent and not to testify and incriminate himself. While Sanderson assented to the fact that the law afforded the defendant a privilege against self-incrimination, she admitted that the defendant's choice not to testify might "creep into her mind." No further questions were asked and no responses were elicited from Ms. Sanderson following this colloquy. During a bench conference, the prosecutor and the trial judge both stated that they heard Sanderson state that she would not hold it against the defendant if she didn't testify.
On appeal, defendant contends that Sanderson refused to recognize a defendant's privilege against self-incrimination and that after her statements to that effect, neither the Court nor the prosecution attempted to rehabilitate her. Defendant relies on State v. Cross, 93-1189 (La.6/30/95), 658 So.2d 683, 687, wherein the Louisiana Supreme Court found that the trial court committed reversible error in refusing to excuse a prospective juror for cause when the juror indicated a defendant's failure to testify would lead him to think the defendant was hiding something and would impact his ability to be a fair juror. The supreme court noted there was no effort made by the trial court or the prosecution to rehabilitate the juror who had stated his inability to follow the law. Id.
In this case, the record reflects that, after defense counsel's explanation, Sanderson accepted that the United States Constitution guarantees an accused the right to remain silent. While this record is not replete with efforts to rehabilitate her possible inability to keep a defendant's choice to avail himself of that right from "creeping into her mind," we find that this record, unlike that in Cross, is not devoid of effort to instruct her on that point. The trial judge initially told the voir dire panel that a criminal defendant has a right not to testify at trial and queried, "Can all of you accept this and not hold it against the defendant should she decide not to testify?" The record reflects that all jurors responded affirmatively. Further, defense counsel explained his client's right to avoid self-incrimination. Finally, the trial judge *867 had the benefit of seeing Sanderson's facial expressions and hearing her vocal intonations during her exchange with defense counsel. After a thorough review of voir dire as a whole and given the trial judge's broad discretion in the matter, we simply cannot say that it was error for the trial judge to deny this challenge for cause.
Second, defendant asserts that prospective juror Donna McClarren did not believe in the presumption of innocence as demonstrated by her comment that an accused must prove himself innocent. She argues that the trial judge erred in denying her challenge for cause.
During the course of voir dire, McClarren heard the trial court's general instructions regarding a defendant's presumption of innocence. Specifically, the trial court explained:
the defendant is presumed innocent until each element of the crime necessary to constitute her guilt is proven beyond a reasonable doubt. The defendant is not required to prove her innocence; she begins the trial with a clean slate. The burden is upon the State to prove the defendant is guilty beyond a reasonable doubt.
The trial court then asked if the prospective jurors could accept that concept; the jurors, as a group, replied affirmatively. The trial court further explained that "the defendant is not required by law to call any witnesses or produce any evidence."
Next, the prosecution and defense both discussed the legal concept of constructive possession. In his effort to explain the legal concept, defense counsel stated, "simply because you're someplace where somebody got a whole bunch of stuff doesn't mean you have possession, constructive possession, of it." He then explained a person has to have dominion and control over something to have constructive possession of it. He reiterated that the burden rests with the State to prove dominion and control.
Defense counsel's explanation drew a response from Ms. McClarren who explained her position by referencing her advice to her 17-year-old son. She stated that she always told her son that if he hangs around trouble he is going to be in just as much trouble as the people who actually caused the trouble.
The defense subsequently challenged McClarren for cause and specifically argued that Ms. McClarren could not make a distinction between a person who merely associates with a guilty party and the guilty party himself. The State responded that Ms. McClarren was simply explaining how she would handle her own son. The trial court agreed with the State and denied defendant's challenge.
In this case, the law on presumption of innocence was explained several times during the proceedings. McClarren never stated that she did not understand that an accused enjoys the presumption of innocence. McClarren's voir dire responses simply demonstrate her advice to her son that "you keep with trouble, you're going to get in trouble." It appears that McClarren's responses may have been more a product of confusion caused by the framing of counsel's questions about her own advice to her son. Finally, we reiterate that the trial judge had the benefit of seeing McClarren's facial expressions and hearing her vocal intonations throughout her numerous exchanges with defense counsel. After a thorough review of voir dire as a whole and given the trial judge's broad discretion in the matter, we simply cannot say that it was error for the trial judge to deny this challenge for cause.
Third, defendant argues prospective juror Rene Veron should have been excused for his medical condition. Here, he contends the trial court applied an inconsistent standard for jurors with medical *868 conditions because the court later excused two jurors, Ann Bordelon and Benjamin Griffin, for essentially the same reason.
During voir dire, Veron stated that he was recovering from back surgery and had problems sitting for a prolonged period of time. He further explained that his back problems had been recently aggravated by an automobile accident that occurred after his surgery. When asked about medication he was taking, Veron explained that he was taking medication for high blood pressure and high cholesterol but he was no longer taking prescription medication for his back injury. He stated that he was unable to concentrate for a long period of time and occasionally missed things people said when his back was hurting. Defense counsel subsequently challenged Veron for cause, which the trial court denied.
On appeal, defendant argues the trial court applied an inconsistent standard for jurors with medical conditions because the court later excused two jurors, Ann Bordelon and Benjamin Griffin, for essentially the same reason. The record shows Bordelon had a heart condition which was unpredictable and required immediate medical attention if she had an attack. Defense counsel challenged her for cause and the State agreed. We find Bordelon's medical condition, which may have required immediate attention, clearly distinguishable from Veron's condition.
Griffin, who has sciatic nerve damage to both legs, explained that sitting for long periods of time bothered him. After voir dire of the panel, the trial court noted that Griffin was having trouble sitting still. At that point, the State challenged him for cause and defense counsel agreed. As stated above, the trial court has wide discretion in excusing prospective jurors for cause because the trial court has the benefit of observing the juror's demeanor during voir dire. In this instance, the trial court personally observed Griffin having difficulty sitting. There was no similar observation regarding Veron noted in the record. We find no indication the trial court abused its discretion in refusing to excuse Veron for cause.
We find defendant's second assignment also lacks merit. Finally, we reviewed the record for errors patent pursuant to LSA-C.Cr.P. art. 920 and found no errors requiring remand.
AFFIRMED.
DALEY, J., DISSENTS WITH REASONS:
I respectfully dissent from the majority's opinion that affirms the defendant's conviction. I would vacate the defendant's conviction due to prejudicial error during jury selection and remand the case for a new trial.
In the present case, a juror, Ms. Sanderson, initially indicated she would not hold the defendant's failure to testify against her. However, upon further questioning, she repeatedly expressed her concern about the defendant's failure to testify. After more intense questioning, Ms. Sanderson was unable to state with certainty that she would not hold the defendant's failure to testify against her and stated it "would creep into her mind" despite an instruction from the judge that she was not to hold it against the defendant.
In State v. Cross, 93-1189 (La.6/30/95), 658 So.2d 683, 687, the Louisiana Supreme Court found the trial court committed reversible error in refusing to excuse a prospective juror for cause when the juror indicated a defendant's failure to testify would lead him to think the defendant was hiding something and would impact his ability to be a fair juror. The Supreme Court noted there was no effort made by the trial court or the prosecution to rehabilitate the juror who had stated his inability to follow the law. The Supreme Court explained that "it is an important part of *869 voir dire examination to discover any prospective juror who may have difficulty understanding this right (the presumption of innocence) as well as to discover a juror who may hold it against a defendant who exercised the right." State v. Cross, supra.
In this case, like in State v. Cross, supra, there was no attempt to rehabilitate Ms. Sanderson after she stated that she might hold defendant's failure to testify against her.
The trial judge's comment that Ms. Sanderson stated during voir dire that she would not hold the failure of the defendant to testify against her completely disregards the juror's later responses during more direct and intense questioning. Ms. Sanderson's voir dire responses as a whole reveal she was unable to follow the law and not allow defendant's silence to affect her verdict. Ms. Sanderson never clearly stated that she would be able to put defendant's failure to testify out of her mind and decide defendant's guilt or innocence solely on the evidence presented. Thus, the failure of the trial court to excuse Ms. Sanderson for cause was an abuse of discretion and constitutes reversible error.
NOTES
[1] Co-defendant, Beverly Stokes, was also charged in the bill of information. The parties were not tried together and this appeal does not pertain to co-defendant Stokes.
[2] The apartment complex is located across the street from the Fourth District substation of the Jefferson Parish Sheriff's Office. The apartment complex has about 20-25 single room units, which are approximately 8 ft. by 12 ft. with an adjoining bathroom. The units rent by the day or by the week.
[3] The record does not show that defendant filed a motion for post-verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821. However, such failure does not preclude appellate review of the sufficiency of the evidence. State v. Washington, 421 So.2d 887, 889 (La.1982).
[4] The apartment where defendant was found was two doors away from her own apartment.