KNOLL, J.,
dissenting in part.
|!While I agree with the majority there was sufficient evidence to support defendant’s conviction, with all due deference I strongly dissent from the majority’s reversal of defendant’s conviction. After carefully reviewing the voir dire examination, I find the trial judge did not abuse his broad discretion in denying defendant’s challenge *203 for cause of prospective juror Roy Johnson. Rather, the record clearly supports the trial judge’s finding Mr. Johnson would be an impartial juror, despite inappropriate questioning by defense counsel.
In order to survive a challenge for cause, a prospective juror must be able to “accept the law as given to him by the court,”[1] including, in this case, consideration of mitigating circumstances as provided by La.Code.Crim. Proc. art. 905.5.[2] Defendant asserts Mr. Johnson’s comments regarding drug and alcohol use show he could not “accept the law,” because intoxication would not be a mitigating circumstance to him. As a reviewing court evaluating this assertion, we must be careful to “accord great deference to the trial judge’s determination and | ^should not attempt to reconstruct the voir dire by a microscopic dissection of the transcript in search of magic words or phrases that automatically signify the jurors’ qualification or disqualification.” State v. Miller, 99-0192 (La.9/6/00), 776 So.2d 396, 405-6; citing State v. Lucky, 96-1687 (La.4/13/99), 755 So.2d 845. This high level of deference is afforded to the trial judge because he or she is in the best position to make a determination based on a review of the entire voir dire as well as personal observations. Miller, 776 So.2d at 405; State v. Cross, 93-1189 (La.6/30/95), 658 So.2d 683. Applying this standard, I find the trial judge’s denial of the challenge for cause of prospective juror Roy Johnson to be adequately supported by the record.
As this Court wrote in State v. Holmes, 06-2988, p. 46 (La.12/2/08);' 5 So.3d 42, 80, “Louisiana law clearly establishes that a party interviewing a prospective juror may not ask a question or pose a hypothetical scenario which would demand a commitment or pre-judgment from the juror or which would pry into the juror’s opinions about issues to be resolved in the case.”[3] Yet, this is exactly what occurred in the present case: defense counsel elicited a pre-trial commitment from Mr. Johnson as to what penalty he would give under specific hypothetical circumstances.
[Defense:] All right. Well let me pose a situation for you again. You have got a guy on trial for first-degree murder. You are a juror. You decided he did a specific-intent killing during a robbery let’s say. There are no defenses to the crime. The guy who did it killed the person. He was not drunk. He was not insane. He was not retarded. He didn’t act in self-defense. It was not an accident. He intended to do it, and he did it.
[Johnson:] Then it is the death penalty.
Following this exchange, defense counsel improperly continued to probe and modify the hypothetical, including inquiring about a scenario where the offender | ¡¡“was drinking or doing drugs so that he couldn’t decide to conform to the law.” When Mr. Johnson stated drugs and alcohol would be “no excuse,” defense counsel immediately followed with a leading question, asking Mr. Johnson to commit on the issue of *204 whether or not drug and alcohol use would be a mitigating factor for him: “Is what you are saying then that that’s not going to be a mitigating circumstance for you?”
Mr. Johnson’s answers on the subject of intoxication were made in response to this improper questioning on the part of defense counsel, without any knowledge on Mr. Johnson’s part of the particular facts of the case. Furthermore, Mr.- Johnson’s statement “Drug, [sic] alcohol, whatever, that’s no excuse for that [murder],” was in accord with Louisiana law. As the majority opinion correctly notes, “[v]oluntary intoxication will not excuse a crime.” Slip op. at 6. Intoxication is not an excuse. On the contrary, under Louisiana law, intoxication is immaterial to the offender’s culpability, except when the intoxication is involuntary or “precludes presence of a specific criminal intent or of special knowledge required in a particular crime.” La. Rev.Stat. § 14:15.
Jurors in a capital case must consider relevant mitigating circumstances in deciding whether to hand down a death sentence at the penalty phase, including if “at the time of the offense the capacity of the offender to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or intoxication.” La.Code Crim. Proc. art. 905.5. This provision applies to a myriad of potential situations which could be afforded vastly different weight by jurors, from mental disorders, to drugging or other involuntary intoxication, to the voluntary decision of an offender, as was asserted by defendant in this case, to take cocaine. It is easy to understand how voluntary intoxication would be afforded little weight in comparison with other circumstances to which this provision would apply. Although he imagined a Lscenario with a drunk offender rather than a drugged one, Mr. Johnson’s concern a voluntarily intoxicated criminal will “come around and do the same thing to me the next time” is certainly a legitimate one with which many would agree.
Indeed, deciding to afford little or no weight to mitigating circumstances such as voluntary intoxication during the penalty phase is within a juror’s discretion. Miller, 776 So.2d at 402-403 (“[w]hile a juror has the discretion to assign whatever weight the juror deems appropriate to any aggravating and mitigating circumstance established by evidence, the juror must be willing to consider mitigating evidence.... There is a significant difference between a prospective juror’s agreeing to consider evidence and the juror’s determination of the importance of this evidence.”) Defense counsel even appears to explain this to Mr. Johnson during voir dire, asking, “Do you understand that in making that decision you have to make your own individual judgment about what’s right?”[4]
A juror in a capital case must be willing to consider the imposition of both a death and a life sentence based on the evidence presented and the trial judge’s instructions. Id. However, even a juror with a strong predisposition towards capital punishment need not be disqualified, if the trial judge finds, in his or her broad discretion, “the juror’s responses as a whole fairly support a conclusion that the juror would keep an open mind about penalty, no matter how grudgingly, until all of the evidence has been presented.” State v. Blank, 04-0204 p. 30 (La.4/11/07); 955 So.2d 90, 117, citing Lucky, 755 So.2d at 851. Because “the line-drawing in many cases of this type is extremely difficult,” the trial judge is afforded great deference to determine a challenge for cause “on the *205 basis of the entire voir dire, and on the judge’s personal observations of the potential jurors during the questioning.” Miller, 776 So.2d at 405-06; citing State v. Cross, 658 So.2d 683.
Throughout voir dire, prospective juror Johnson showed a consistent | ^openness to applying the law to the facts of the case at hand. When asked if he was the “kind of person who would stick to his guns,” he replied he was not and clarified he was not “hardball.” He stated the death penalty would not be an “automatic” decision when defense counsel leadingly suggested it would be.[5] He repeatedly stated he would be open to evidence and new information introduced by counsel[6] and was clear he would respect the opinions of his fellow jurors.[7] On a scale of one to five, one being always in favor of the death penalty and five being always against it, Mr. Johnson rated himself a three, squarely in the middle. He stated he would not be swayed one way or the other until he heard all of the evidence,[8] and he said he could listen to the relevant mitigating circumstances.[9]
When Mr. Johnson said “Drug, [sic] alcohol, that’s no excuse for that,” defense counsel should have stopped and clarified that, in the context of considering mitigating circumstances,- intoxication is not an excuse but a factor for |fieach juror to individually consider and assign weight to as a mitigating circumstance. Instead, defense counsel improperly solicited, via a leading question, Mr. Johnson’s commitment intoxication would not be a mitigating circumstance. We should be wary of finding a trial judge abused his discretion in denying a challenge for cause on the basis of responses to such improper questioning, especially when the record shows the prospective juror otherwise expresses openness and willingness to consider evidence.
Finally, while it may be true some of Mr. Johnson’s comments appear inconsistent, this is acceptable and, indeed, to be expected. As this Court explained in State v. Miller, “The broad scope of voir dire *206 sometimes produces answers from a lay person that appear to be inconsistent, and the delicacy of this situation is an important factor underlying the rule that requires a reviewing court to accord substantial deference to the trial judge’s rulings on challenges for cause relating to a juror’s views of the death penalty.” Miller, 776 So.2d at 403.
In denying Mr. Johnson’s challenge for cause, the trial judge stated “watching Mr. Johnson and watching how he says, what he says, and his manner and demeanor and looking at the totality of his testimony this afternoon, I am convinced he would be extremely capable of being fair and impartial and neutral and would give Mr. Mickelson a fair trial.” Under these circumstances, I find denial of defendant’s challenge for cause is supported by the record, especially in light of defense counsel’s improper questioning. I find defendant fails to show the trial judge abused his broad discretion, resulting in error meriting reversal of defendant’s conviction.

. La.Code Crim. Proc. art. 797.

. La.Code Crim. Proc. art. 905.5 states in pertinent part: "The following shall be considered mitigating circumstances: ... (e) At the time of the offense the capacity of the offender to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or intoxication.”

.See also, State v. Taylor, 03-1934, (La.5/25/04); 875 So.2d 58; State v. Vaughn, 431 So.2d 358 (La. 1983); State v. Nero, 319 So.2d 303 (La. 1975); State v. Corbin, 285 So.2d 234 ‘(La.1973). State v. Williams, 230 La. 1059, 89 So.2d 898 (1956).

. Mr. Johnson replied, “That's right, that's right.”

. [Defense:] And again that means that you would vote for the death penalty under those circumstances [where defendant has specific intent and is found guilty of first degree murder]?
[Johnson:] Yes.
[Defense:] And that would be an automatic situation.
[Johnson:] No, it’s not automatic ...

. [Defense:] Is there something we could put on then in terms of mitigating evidence that you would listen to?
[Johnson:] That would be up to you then. I'm listening.
[Defense:] Well, let's back up a step. You are listening. What does that mean? Does that mean you are still open [to imposing life imprisonment rather than the death penalty]?
[Johnson:] That means I listen at you, what you got to bring to the table.
[Defense:] All right. Do I have kind of an uphill battle then?
[Johnson:] No, just do your job. That’s it.

. [Johnson:] People got different opinions. I give you my opinion. That doesn’t stop other people from their opinion.
[Defense:] If somebody has that other opinion, would you still respect what that person is saying?
[Johnson:] I would respect them, yes.

. [State:] So it sounds like to my [sic] what you are telling me is that you are open to both outcomes, death and life.
[Johnson:] I’m open to both ways, you know.
[[Image here]]
[State:] ... there is not anything swaying you one way or the other. Is that right?
[Johnson:] No.
[State:] Until you hear the evidence right?
[Johnson:] Until I hear the evidence.

. [Defense:] All right. Could you listen to the mitigating circumstances the law puts out there?
[Johnson:] Yeah, I can listen.