341 So.2d 885 (1977)
STATE of Louisiana
v.
Edward NOLAN.
No. 58373.
Supreme Court of Louisiana.
January 24, 1977.
*886 Wilson R. Ramshur, Willis & Ramshur, St. Francisville, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leon A. Picou, Jr., Dist. Atty., Cynthia Picou Branton, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
Defendant, an inmate of Louisiana State Penitentiary, was indicted by the West Feliciana Parish Grand Jury for the second degree murder of a fellow prisoner. La. R.S. 14:30.1. Twelve jurors unanimously found defendant guilty of manslaughter and the court sentenced him to serve five years at hard labor consecutive to any previous sentence. On appeal, defendant urges nine assignments of error, one of which requires reversal of his conviction and sentence.
Following an extensive voir dire examination of a prospective juror, Mrs. Cornelius Doherty, defense counsel challenged her for cause. Upon the court's refusal to excuse the juror for cause, defense counsel challenged her peremptorily and exhausted the remainder of his peremptory challenges before the panel was completed. See, La.C. Cr.P. art. 800. We find that the court erred in failing to sustain the challenge for cause.
The prospective juror, a woman of sixth grade education, vacillated in her responses and indicated an inability to understand the questions asked by the attorneys and the judge. On the presumption of innocence and defendant's right not to testify in his own behalf, the following exchanges took place between the juror, counsel, and the court:
"[BY DEFENSE COUNSEL]:
"Q. Do you believe that the authorities at Angola would send a convict down here to St. Francisville for prosecution unless he was guilty? Do you believe that in your mind?
"A. No.
"Q. In your mind again, I am directing attention to what you believe in your mind emotionally. Do you think that a Grand Jury would indict a convict unless he was guilty?
"A. Yes.
"Q. Again, I ask youyou are close to an emotional level, what you feel aboutthe District Attorney's office. Do you feel in your mind that if the District Attorney's office prosecuted the convict that more than likely that he is guilty?
"A. I think so and he would not be on trial.
"* * *
"BY THE COURT:
"You understand Mr. [sic] Doherty that Mr. Nolan is on trial. We don't know whether he is guilty or not guilty. I don't know and you don't know. The question was, `do you believe that merely because the District Attorney is going ahead with this trial that he is guilty'?
"A. I think he is guilty.
"BY THE COURT:
"How can you think he is guilty whenI don't think you understand. This trial has not started yet. No witness has testified . . . Do you believe that merely because we are going to have a trial that the man is guilty because he is on trial?
"A. No.
"BY THE COURT:
"Do you understand that you and I are here to find out why Mr. Nolan is guilty or not guilty? Do you understand that?
"A. Yes.
"BY THE COURT:
"You don't think he is guilty now? You don't think is not guilty? You don't know?
"A. I don't know if he is guilty or what.
"BY THE COURT:
"Rephrase it.
"[BY DEFENSE COUNSEL]:
"Q. Mrs. Doherty, what I am asking you: do you have any emotional feeling in your mind that because the District Attorney's office is prosecuting an inmate at Angola *887 for a certain crime, that because of the fact that they are prosecuting him is an indication that more than likely he is guilty?
"A. If he is found guilty.
"* * *
"Q. Mrs. Doherty, I will ask you this question: assuming that someone is in trouble, do you think that if this individual is in trouble and he fails to speak up and tell his side of the story, it probably means that his side of the story is unfavorable to him?
"A. Yes.
"Q. One step further: do you think that failure of a man accused of wrongdoing, this is an emotional feeling on your partin your mindthat the failure of a man accused of wrong-doing to explain his acts probably means that he is guilty?
"[BY ASSISTANT DISTRICT ATTORNEY]:
"I don't thing she understands.
"BY THE COURT:
"She does not understand.
"* * *
"BY THE COURT:
"Do you understand Mr. Nolan does not have to testify. Would you hold it against him if he did not?
"A. No.
"* * *
"[BY DEFENSE COUNSEL]:
"Q. Mrs. Doherty, in your mind from an emotional standpoint again do you feel that a defendant who has not taken the stand to testify had something to hide?
"[BY ASSISTANT DISTRICT ATTORNEY]:
"He has stated that question three different ways.
"BY THE COURT:
"What is your answer?
"A. I don't think so.
"[BY DEFENSE COUNSEL]:
"Q. If no evidence or witnesses were presented on behalf of the defendantthat is after the State presented its case and the defendant does not present any evidence or witnesses on behalf of himself, would you feel in your mind any obligation to find him guilty?
"A. Yes.
"Q. What I am asking youwould you require him to present any proof of his innocence?
"A. Yes.
"* * *
"[BY DEFENSE COUNSEL]:
"Q. Will you require the State to prove its case beyond a reasonable doubt?
"A. I don't understand.
"Q. I will repeat this question. Will you require the State to prove the defendant is guilty beyond a reasonable doubt. Do you understand the question?
"A. Yes.
"Q. Please give your answer to it.
"A. Yes.
"Q. Throughout this trial, let me tell you this, the defendant is presumed to be innocent. He is presumed to be innocent until proven guilty. Are you positive to a moral certainty that you can afford this defendant the presumption of innocence.
"A. Yes.
"[BY ASSISTANT DISTRICT ATTORNEY]:
"Mrs. Doherty, do you feel like there is any reason why you can't give this man a fair trial? You may have said you believed somebody else might believe in grand jury and things like thisI am telling you and the Judge will tell you that this man is innocent. Can you accept the law?
"A. Yes.
"[BY ASSISTANT DISTRICT ATTORNEY]:
"And the law further says a man does not have to testify in his own behalf, do you accept that law?
"A. Right.

*888 "[BY ASSISTANT DISTRICT ATTORNEY]:
"And it goes one step further, the law says that when a man does not testify, you can't as a juror, you are going to take an oath. If you become a juror and you have to swear you accept the law and that you will not hold it against him. You can't consider that when you deliberate, when you try to reach a verdict. Can you do that?
"A. I can."
Additionally, because the killing occurred in the penitentiary and it was anticipated that the prime defense witnesses would be inmates, Mrs. Doherty was questioned about the relative weight she would attach to a police officer's testimony vis-a-vis inmate testimony:
"[BY DEFENSE COUNSEL]:
"Q. I will ask you this Mrs. Doherty: during the course of the trial there will be testimony by inmates. Assuming there is testimony by inmates would youdo you believe in your mind, that during the course of this testimony that one convict would be likely to distort the truth and testifying about another convict?
"A. I think so.
"Q. In other words, you believe a convict might not tell the truth when testifying about another convict?
"A. Sometime they will and sometime they won't.
"Q. Do you believe that a correctional officer would tend to distort the truth about what a convict did in giving his testimony. In other words, you believe a correctional officer would lie about what a convict did?
"A. Yes.
"Q. How about a law enforcement officerwould he also lie about what a convict said or did?
"A. No.
"* * *
[BY DEFENSE COUNSEL]:
"Q. Would you rely on the word of a convict?
"A. No.
"Q. Do you understand that before a person testified as a witness he is required to take an oath; and in connection with taking an oath, he has to swear to tell the truth, the whole truth, and nothing but the truth. Do you feel Mrs. Doherty, that a convict would feel bound by such an oath that he has taken?
"A. Yes.
"Q. Do you feel that after taking an oath as I have related you that it is to be truthful, would a convict feel any moral compulsion to be truthful?
"A. Repeat that again.
"Q. After a convict has taken an oath to be truthful, do you believe he would feel a moral compulsionthat he would feel compulsed morally to tell the truth?
"A. Yes.
"* * *
"BY THE COURT:
"Do you feel, Mrs. Doherty, that you are biased toward inmates; that you would favor law enforcement witnesses?
"A. Yes.
"[BY DISTRICT ATTORNEY]:
"She doesn't understand.
"* * *
"[BY ASSISTANT DISTRICT ATTORNEY]:
"Do you feel that you can look at all the witnesses from the witness stand and listen to what they say. Just because a man is an inmate, you can't saywell, because he is an inmate I am not going to believe him regardless of what he says. Can you do that?
"A. I can.

*889 "[BY ASSISTANT DISTRICT ATTORNEY]:
"You are going to hear law enforcement officialsjust because he is a law enforcement official you've still got to listen to his testimony. You can't say, wellhe works for the State, he must be telling the truth. Do you understand that? You have got to judge his demeanor on the stand. Can you do that?
"A. Yes."
During the course of the voir dire examination, the trial judge repeatedly remarked upon the venirewoman's apparent incomprehension of the questions, but nevertheless concluded that she was merely "confused" and did not "[present] any prejudice one way or the other." Consequently, he refused to excuse her for cause.
Article 797 of the Louisiana Code of Criminal Procedure provides that a juror may be excused for cause on either of the following pertinent grounds:

"* * *
"(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence; [or]
"* * *
"(4) The juror will not accept the law as given to him by the court;

"* * *
Under the jurisprudence, a juror who is incapable of recognizing the defendant's presumption of innocence or who will unquestioningly credit the testimony of law enforcement officers over that of defense witnesses is not competent to serve. State v. Thompson, 331 So.2d 848 (La.1976); State v. Johnson, 324 So.2d 349 (La.1976), and State v. Jones, 282 So.2d 422 (La.1973).
Portions of Mrs. Doherty's testimony reveal a predisposition in favor of the State and police witnesses and against the defendant and inmate witnesses, upon whose testimony the defense depended. Admittedly, there were contrary indications on her part, but these do not dispel our doubts concerning her partiality. We find this case distinguishable from those in which a juror has voiced an opinion seemingly prejudicial to the defense but subsequently, upon further inquiry or instruction by the court, has demonstrated the willingness and ability to decide the case impartially, according to the law and evidence; under those circumstances, a challenge for cause is properly refused. See, State v. Governor, 331 So.2d 443 (La.1976) and State v. Johnson, supra. In the instant case, however, the juror's retractions, occasionally following considerable coaching by the court and district attorney, were unreliable because she did not appear to be steadfast in any of her opinions. For instance, she variously stated that she did not believe that defendant would be prosecuted if he were not guilty; that the Grand Jury indictment was not conclusive evidence of guilt; that the district attorney's office would not proceed to trial unless defendant were guilty; that the district attorney's prosecution of defendant would be indicative of guilt "if he [were] found guilty;" and that she would require the State to prove defendant's guilt beyond a reasonable doubt.
If Mrs. Doherty's wavering responses do not conclusively establish that she was biased against defendant, they do show that her ability to grasp the questions propounded was limited, a fact which the trial judge himself observed. If she could not comprehend these simple and direct inquiries, she could not be expected to accept the court's instructions and apply them to the facts of the case, which raised issues of self-defense and provocation. The State conceded in oral argument that comprehension of the court's instructions on the law would probably have been difficult for this juror. We agree and find that this factor alone was sufficient to disqualify her from serving on the petit jury. A juror who lacks the capacity to understand the law cannot accept the law as given to him by the court. La.C. Cr.P. art. 797(4). Cf. State v. Raymond, 258 La. 1, 245 So.2d 335 (1971) and State v. *890 Washington, 256 La. 233, 236 So.2d 23 (1970); State v. Rountree, 32 La.Ann. 1144 (1880). The trial court abused its discretion in failing to excuse this juror for cause.
One other assignment of error warrants comment. Defense counsel complains that he was improperly prevented from cross-examining Lt. Richard Rodriguez, a prison guard, for possible bias.
The killing occurred after defendant was released from his cell on a request to go the hospital. Defense counsel attempted to prove that just prior to the incident the victim, Ferrygood, had intimidated defendant by throwing makeshift bombs into his cell, and that defendant had stabbed Ferrygood either in self-defense or in heat of blood. However, Rodriguez cast doubt upon these defenses by testifying that he noticed no animosity between the two men until defendant's cell door was opened and he attacked Ferrygood.
Defense counsel contends that because the tension between the two men was readily apparent before defendant was released, Rodriguez was remiss in his duty by permitting their confrontation. The threat of civil liability, counsel maintains, provided Rodriguez with a motive for falsifying his testimony; but the trial court prevented defense counsel from questioning Rodriguez as to the possibility of a civil suit being lodged against him.
La.R.S. 15:492 provides:
"When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admits such fact, any other witness may be examined to establish the same."
Counsel's proposed inquiry was intended to show that Rodriguez' testimony was biased or that he had an interest in his asserted version of the facts, and under this provision the trial court should have allowed cross-examination on the subject of his potential civil liability.
The remaining assignments of error are without merit.
Accordingly, defendant's conviction and sentence are reversed, and the case is remanded to the district court for a new trial.
SANDERS, C.J., concurs in the decree only.