948 So.2d 105 (2007)
STATE of Louisiana
v.
Calvin LINDSEY.
No. 2006-K-255.
Supreme Court of Louisiana.
January 17, 2007.
*106 Charles C. Foti, Jr., Attorney General, Richard J. Ward, Jr., District Attorney, Elizabeth A. Engolio, Assistant District Attorney, for Applicant.
Gwendolyn K. Brown, Baton Rouge, for Respondent.
KIMBALL, Justice.
The issue presented in this case is whether the district court abused its discretion in denying defendant's challenge for cause of a prospective juror who testified she would afford police officer testimony greater credibility, but also stated she would do her best to give all of the testimony the same weight. For the reasons that follow, we find the district court was within its discretion in denying the challenge for cause based on the entirety of the relevant voir dire testimony. Accordingly, we reverse the judgment of the court of appeal and reinstate defendant's conviction and sentence. The case is remanded *107 to the court of appeal for consideration of defendant's remaining assignment of error.

FACTS AND PROCEDURAL HISTORY
In March 2003, police officers from the Plaquemine City Police Department, assisted by the Vermilion Parish Sheriff's Office, conducted an undercover narcotics operation purchasing narcotics from street-level dealers around the Plaquemine area and in Iberville Parish. On March 11, 2003, defendant, who has part of one leg missing, approached one of the undercover vehicles in a wheelchair and asked the officers what they needed. The officer driving the vehicle, which was equipped with a wireless transmitter and a video recorder, informed defendant he needed a "forty," which is slang for $40 worth of crack cocaine. Defendant told the officer to "make a block" and meet him on the other side of the tracks. When they met at the second location, defendant sold two rocks of crack cocaine for $40 to the officer on the passenger side of the vehicle.
A jury found defendant guilty as charged of distribution of cocaine, and the court sentenced him to nine years imprisonment at hard labor, with the first two years of the sentence to be served without benefit of parole, probation, or suspension of sentence. The First Circuit Court of Appeal reversed the conviction, finding the district court erred when it denied the defense challenge for cause of prospective juror Bonny Lewin. We granted certiorari to review the correctness of this decision.

DISCUSSION
Prejudice is presumed when a district court erroneously denies a challenge for cause and the defendant ultimately exhausts his peremptory challenges. State v. Kang, 02-2812, p. 3 (La.10/21/03), 859 So.2d 649, 651; State v. Robertson, 92-2660, p. 3 (La.1/14/94), 630 So.2d 1278, 1280. A district court's erroneous ruling which deprives a defendant of a peremptory challenge substantially violates that defendant's rights and constitutes reversible error. Kang, 02-2812, at p. 3, 859 So.2d at 652; State v. Cross, 93-1189, p. 6 (La.6/30/95), 658 So.2d 683, 686; State v. Bourque, 622 So.2d 198, 225 (La. 1993), overruled on other grounds by State v. Comeaux, 93-2729 (La.7/1/97), 699 So.2d 16; State v. McIntyre, 365 So.2d 1348, 1351 (La.1978). When a defendant uses a peremptory challenge after a challenge for cause has been denied, the defendant must show: (1) erroneous denial of the challenge for cause; and (2) use of all peremptory challenges. Kang, 02-2812, at p. 3, 859 So.2d at 652; Cross, 93-1189 at p. 6, 658 So.2d at 686; Robertson, 92-2660 at p. 2, 630 So.2d at 1280; State v. Lee, 559 So.2d 1310, 1316 (La.1990), cert. denied, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991). In the instant case, defendant exhausted all of his peremptory challenges, and therefore, his objection to the ruling refusing to sustain his challenge for cause is properly before the court.
Under La.C.Cr.P. art. 797, a defendant may challenge a juror for cause if:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(4) The juror will not accept the law as given to him by the court;
When a juror expresses a predisposition as to the outcome of a trial, a *108 challenge for cause should be granted. Lee, 559 So.2d at 1318. Yet, if after subsequent questioning, or rehabilitation, the juror exhibits the ability to disregard previous views and make a decision based on the evidence presented at trial, the challenge is properly denied. Id. When assessing whether a challenge for cause should be granted, the district judge must look at the juror's responses during his or her entire testimony, not just "correct" isolated answers or, for that matter, "incorrect," isolated answers. Id.
Generally, an individual who will unquestionably credit the testimony of law enforcement officers over that of defense witnesses is not competent to serve as a juror. Kang, 02-2812, at pp. 4-5, 859 So.2d at 652-53; State v. Allen, 380 So.2d 28, 30 (La.1980); State v. Jones, 282 So.2d 422, 431 (La.1973). However, a mere relationship between a prospective juror and a law enforcement officer is not of itself grounds to strike the juror for cause. Kang, 02-2812, at p. 5, 859 So.2d at 653; State v. Anthony, 98-0406, p. 24 (La.4/11/00), 776 So.2d 376, 392; State v. Smith, 430 So.2d 31, 38 (La.1983). Additionally, a prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause, and a district judge's refusal to excuse him on the grounds of impartiality is not an abuse of discretion, if after further questioning the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. Kang, 02-2812, at p. 5, 859 So.2d at 653; Lee, 559 So.2d at 1318; State v. Baldwin, 388 So.2d 664, 671-72 (La.1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 901, 66 L.Ed.2d 830 (1981); Allen, 380 So.2d at 30. A challenge for cause should be granted, however, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render a judgment according to law may be reasonably implied. Kang, 02-2812, at p. 5, 859 So.2d at 653; State v. Hallal, 557 So.2d 1388, 1389-90 (La.1990).
A district judge has broad discretion in ruling on a challenge for cause, and the determination will not be disturbed unless a review of the entire voir dire indicates an abuse of discretion. Cross, 93-1189 at p. 7, 658 So.2d at 686; Bourque, 622 So.2d at 225; State v. Jones, 474 So.2d 919, 926 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986).
We begin our analysis by examining the entirety of prospective juror Bonny Lewin's voir dire responses relating to her ability to evaluate the credibility of testimony given by police officers. First, the court questioned Bonny Lewin about her personal associations with law enforcement and whether that would impact her ability to evaluate the credibility of witnesses fairly:
Q: Do you have any friends or relatives employed by the District Attorney's office or any law enforcement agency of any kind?
A: Well, I have friends on the Baton Rouge City Police force.
Q: Okay. The fact that you have friends that work in law enforcement, would that in any manner affect your ability to sit here and give both State and the Defendant a fair trial?
A: No, sir.
Q: Will you be able to evaluate the credibility of law enforcement officers just as much as you will evaluate the credibility of any other witness?
A: Yes, sir.
Thereafter, the defense counsel questioned Ms. Lewin further about her ability to *109 evaluate the credibility of police officers' testimony:
Q: You don't have a problem with sitting in judgement (sic) of anybody?
A: No.
Q: Making a determination? Okay. Police officers' testimony, you heard me ask the questions and you can see
A: I tend to give them a little more credibility.
Q: You do? Why?
A: I don't know. I just feel like they're trained, like lawyers, I think they tend to tell the truth more than some of these laymen.
Q: Lawyers tell the truth more?
A: I know there are some jokes out there, but in my opinion. I'm just being honest with you, I tend to give a little more credibility.
Q: Okay. So you would give more credibility to a police officer's testimony than you would someone else?
A: Probably.
Q: Okay. Well, you understand that that's not a reason to do that, just because they're a police officer; do you understand that?
A: Yes.
Q: Okay. If the judge told you you can't do that just because they're a police officer, would that pose a problem for you?
A: I would do my best to make it all legal, but I'm just being honest with you.
Q: Okay. And that's what
A: If I have two people there, and one was a police officer telling me a story I'd tend to believe the police officer first.
Q: Okay. You can't say, well, that's a human being just like anybody else?
A: I can do my best.
Q: Because, see, what you have to determine, it wouldn't matter whether it's a police officer or not, just anybody, you have to determine credibility because that's one of your jobs as a juror.
A: Right.
Q: Okay. But you don't think you could just treat them the same way as anybody else?
A: I'm not sure; I've never been put in that position.
Q: Okay. Well, that's why we're asking you the questions because we're fixing to put you in that position.
A: Right.
Q: Okay. But you really think you'd have a problem treating them like anybody else?
A: I would try to, I can'tI don't know.
Q: Okay. Well, I'm going to have to ask you in this fashion, can you promise me that you could put it aside and not give them any more believability because they are a police officer; could you do that?
A: I'm not sure.
Q: Okay. Thank you. Would you please pass the microphone.
The court then clarified Bonny Lewin's position:
THE COURT: Just before we go through the questions of cause, the Court wants to go back because I foresee something coming. Ms. Lewin, since you have the microphone, I just have a quick question as toas the attorneys say, there is no right or wrong answer but I just want to clarify in regard to your opinion of police officers['] testimony. And I understand sometimes certain people in certain occupations may, I mean, if we put a priest on the witness stand we assume he's an *110 honest person that's going to tell the truth, but sometimes in the real
MS. LEWIN: I think that's basically what I'm trying to say.
THE COURT: sometimes in the real world we don't know if they do or they don't.
MS. LEWIN: Right.
THE COURT: The fact that a police officer testifies that this book is red and another guy says it's green, you wouldn't necessarily believe this book would be red
MS. LEWIN: Right.
THE COURT: just because he's a police officer?
MS. LEWIN: No, I wouldn't.
THE COURT: Okay. What I'm asking is thatand I'm going to give you instructions at the end and if those instructions were going to tell you the law and the way you weigh evidence and things of that nature, of course, you're the trier of fact, you have to decide what the facts are, will you be able to put your personal feelings aside as to, you know, who's giving that testimony and weigh how they testify and how they say it and what you see before you make your decision?
MS. LEWIN: I would think so. Like you said, the red and the green, definitely. But I just do hold them in a higher regard; I was just trying to be honest with that.
THE COURT: I understand.
MS. LEWIN: I would do my best to give all testimony the same.
THE COURT: Thank you, ma'am.
In a sidebar conference to discuss challenges, the following exchange took place:
THE COURT: Ms. Lewin, Bonny, I was of the opinion that she rehabbed a little bit. . . . Price and Little, I'm going to give you those two. Ms. Lewin, giving them more weight or anything, I don't believe
MR. PARKS [defense counsel]: She was very honest, I asked her three times. Well, since we're only having police officers, it's kind of hard that you're going to say that, hey, we're going to believe
THE COURT: I understand, just like you hold a priestI understand what she was saying. She's rehabilitated. I'm going to give y'all Little and I'm going to give y'all Price. I'm not going to give you Lewin.
Thus, the voir dire testimony demonstrates Bonny Lewin initially indicated to the court an ability to evaluate police officer testimony the same as she would the testimony of any other witness. Upon further questioning by the defense, Bonny Lewin stated she would tend to give police officers' testimony more credibility. She initially told defense counsel she was unsure if she could treat all testimony the same. When she was again questioned by the court, however, she agreed with the court's comparison of a police officer to a priest. The district court suggested one might assume a priest would be honest, but in the "real world" one cannot know if a priest is telling the truth or not. The court then asked, "The fact that a police officer testifies that this book is red and another guy says it's green, you wouldn't necessarily believe this book would be red" and Bonny Lewin agreed with the court that she would not believe the book was green just because a police officer testified it was. When the court then asked her if she could put her personal feelings aside, Bonny Lewin testified "I would think so. Like you said, the red and the green, definitely. But I just do hold them in a higher regard; I was just trying to be honest with that." She concluded by stating, "I would do my best to give all testimony the same."
*111 In the instant case, the district court determined prospective juror Bonny Lewin was rehabilitated and could be impartial, despite her responses to defense counsel indicating she would tend to give police officers' testimony a little more credibility because of their training. In reversing the conviction and remanding the case for a new trial, the court of appeal held the district court abused its discretion in denying the defense challenge for cause of prospective juror Bonny Lewin, finding that her comments during voir dire that she would credit the testimony of police officers over the testimony of other witnesses indicated she could not be a fair and impartial juror. The court of appeal noted that although on three separate occasions Ms. Lewin said she would do her best to be fair and impartial, she never expressly stated she would or could put her bias aside. Finally, the court of appeal concluded Lewin's answers to the district court's hypothetical about whether she would believe a green book was red because a police officer said it was red established merely "that the erroneous testimony of an ostensibly credible witness would not affect her ability to recognize a self-evident, independently observable fact" and did not demonstrate she could impartially assess the credibility of a witness.
This court finds Bonny Lewin spoke openly and candidly throughout her voir dire. Her statements to defense counsel that she would give police officer testimony a little more credibility do not reflect an inability to evaluate all testimony equally. Instead, Bonny Lewin attempted to convey to the court that she "hold[s] them in a higher regard." When instructed on the law by the court, she expressed a willingness to apply it. Bonny Lewin explained her tendency to give a little more credibility to police officers' testimony by stating, "I just feel like they're trained, like lawyers, I think they tend to tell the truth more than some of these laymen."
In Kang, 02-2812, at p. 7, 859 So.2d at 654, this court held a prospective juror's inclination to give more weight to the testimony of police officers because they are trained did not rise to the level of a prejudicial statement, stating:
[The prospective juror] did not state he would give more weight to an officer's testimony regarding anything outside of his or her powers of observation, nor did he state he would automatically believe the testimony of an officer simply because he was a police officer. He simply indicated that because police officers are trained in powers of observation, he would probably give more weight to their observations. This testimony, in and of itself, does not rise to the level of a prejudicial statement such that the trial court was required to rehabilitate the prospective juror.
Likewise, in Baldwin, 388 So.2d at 671, this court determined the district court did not abuse its discretion by refusing to excuse a potential juror for cause merely because he would favor the testimony of police officers as they are trained observers, stating:
Kemp's brother-in-law is a Monroe police officer and he is personally acquainted with other law enforcement people. Kemp stated that the relationship would not influence him but admitted that he would favor the testimony of a police officer over that of the defendant because police officers are trained observers, and have nothing to gain by giving false testimony. When examined by the court, Kemp said that he would give believable testimony from a stranger, which he had no reason to doubt, equal weight with that of a police officer. He testified that he had no preconceived notions about the case and could be a *112 fair and impartial juror, free of any prejudice. Like the prospective juror in State v. Governor, 331 So.2d 443 (La. 1976), Kemp said he would consider the testimony as a whole. He agreed that policemen can make mistakes and said he would not exclude testimony contra to that of a policeman.
Kemp was not unqualified to serve as a juror merely because he regarded policemen as trained observers. This does not imply that he would therefore accept their testimony without question. There was no abuse of discretion in refusal of the challenge for cause.
Moreover, this court has previously reached similar conclusions in a number of other instances. Allen, 380 So.2d at 29-30 (holding that although prospective jurors initially indicated they would give more weight to the testimony of police officers, they subsequently, upon further inquiry, demonstrated their willingness and ability to decide the case impartially, according to the law and evidence); State v. Johnson, 324 So.2d 349, 352 (La.1975) (reasoning district judge did not abuse his discretion in denying a challenge for cause where prospective juror initially responded that he might give slightly more credence to testimony of a deputy sheriff than that of other witnesses, especially where there is no allegation of a direct conflict between the testimony of the sheriff and the defense witnesses); Jones, 282 So.2d at 426 (holding it was not reversible error for the district court to deny the challenge where the main thrust of the prospective juror's answers was that, in weighing the testimony, he would take into account a police officer's training in observing and reporting crime); State v. Johnson, 263 La. 462, 268 So.2d 620, 622 (1972) (stating district judge's ruling was correct in denying a cause challenge as to a prospective juror who testified he would be more apt to give greater credibility to police officer because to hold such a position one "has to be honest and truthful about it").
Nevertheless, in State v. Nolan, 341 So.2d 885, 889 (La.1977), this court held the district court abused its discretion in failing to remove a prospective juror for cause whose testimony revealed a predisposition in favor of police and against inmate witnesses, upon whose testimony the defense depended. This court went on to state if the prospective juror's wavering responses did not conclusively establish bias, they nonetheless demonstrated her limited ability to grasp the questions asked during voir dire, calling into question her ability to accept the court's instructions and apply them to the facts of the case. Id.
We find the instant case distinguishable from Nolan and more analogous to Kang and Baldwin. Bonny Lewin did not exhibit bias against possible defense witnesses as the prospective juror did in Nolan, nor did she exhibit a limited ability to comprehend the law. Instead, Bonny Lewin, like the prospective jurors in Kang and Baldwin, expressed her respect for police officers and acknowledged she would tend to give them more credibility due to their training. The district judge analogized Bonny Lewin's high regard for police officers to the generally high regard given to priests and found that this high regard did not rise to the level of partiality. In questioning whether Bonny Lewin would believe a police officer who testified a green book was red, the district judge demonstrated that Bonny Lewin would not automatically believe police officer testimony that was not supported by the evidence. Although the example may have been flawed to the extent Bonny Lewin could independently observe for herself the color of the book, it nonetheless showed her ready acknowledgment that she would not believe a police officer when his testimony *113 was contradicted by the other evidence she would observe as a juror. Ultimately, Bonny Lewin stated she would do her best to treat all testimony equally. Thus, the district court did not abuse its discretion in denying the defendant's challenge for cause of prospective juror Bonny Lewin.

DECREE
For the foregoing reasons, we find the district court was within its discretion in denying the challenge for cause based on the entirety of the prospective juror's voir dire testimony. Accordingly, we reverse the judgment of the court of appeal and reinstate defendant's conviction and sentence. The case is remanded to the court of appeal for consideration of defendant's remaining assignment of error.
REVERSED. CONVICTION AND SENTENCE REINSTATED. REMANDED TO THE COURT OF APPEAL FOR CONSIDERATION OF THE REMAINING ASSIGNMENT OF ERROR.
JOHNSON, J., dissents.