996 So.2d 387 (2008)
STATE of Louisiana, Appellee
v.
James Earl FRANKLIN, Appellant.
No. 43,173-KA.
Court of Appeal of Louisiana, Second Circuit.
September 17, 2008.
*390 Louisiana Appellate Project, by Annette Roach, for Appellant.
James Earl Franklin, In Proper Person.
Robert W. Levy, District Attorney, Stephen K. Hearn, Jr., Assistant District Attorney, for Appellee.
Before PEATROSS, MOORE and LOLLEY, JJ.
MOORE, J.
James Earl Franklin was charged by bill of information with two counts of distribution of cocaine, La. R.S. 40:967, and one count of distribution of marijuana, La. R.S. 40:966. A 12-member jury unanimously found him guilty as charged on all three counts. The court imposed three concurrent sentences of 20 years at hard labor and fines of $25,000, with six months' default time, for the three convictions; the cocaine offenses each included two years without benefits. Franklin now appeals, raising six assignments of error through counsel and seven assignments pro se. For the reasons expressed, we affirm.

Factual Background
The facts are not contested on appeal. Franklin owned a plant nursery, managed an apartment complex and was a licensed insurance agent in Grambling, Louisiana. The Lincoln Parish Narcotics Enforcement Team developed him as a suspect selling drugs out of his home on Bennett Road, west of Grambling. Deputy Stephen Williams engaged a special agent, Officer Terry Levine of the Monroe Police Department, and a confidential informant, Andre Albritton, to make arranged purchases of drugs from Franklin on June 8 and June 13, 2006. On June 8, Officer Levine bought two rocks of crack cocaine, and on June 13, one rock of crack and one ounce of marijuana, using marked $20 bills. He promptly delivered the substances to Deputy Williams, who sent them to the crime lab where they tested positive for cocaine and marijuana.
Deputy Williams arrested Franklin on June 14, and the state billed him on these three charges on July 18, 2006, in Bill No. 54,574.

Procedural History
Because waiver of court-appointed counsel is an issue on appeal, we will relate pretrial matters in some detail.
*391 At the time of his arrest, Franklin also stood charged with possession of marijuana with intent to distribute and possession of cocaine, arising from a February 2006 arrest (Bill No. 54,024), and possession of marijuana, second offense, arising from a May 2006 arrest (Bill No. 54,438), but he was free on bond when arrested for the instant offenses. Several pretrial hearings addressed one or more of the cases.
At a preliminary examination in Bill No. 54,024 on March 21, 2006, Franklin stated that he wished to defend himself. The judge questioned him closely about this decision, warning him three times of the perils of self-representation, and ultimately found that he knowingly and intelligently waived his right to counsel. At his arraignment in Bill No. 54,024 on April 18, Franklin again advised the court that he could afford to hire counsel but would prefer to represent himself.
At a July 18 hearing for pretrial matters in Bill No. 54,024, arraignment in Bill No. 54,438, and the filing of Bill No. 54,574, Franklin appeared with counsel from the indigent defender office, Lewis Jones, to represent him in Bill No. 54,438. Franklin again rejected the offer of counsel on Bill No. 54,024 but asked for counsel in Bill No. 54,574 (the instant case); Mr. Jones was appointed. Ten days later, Franklin filed a pro se motion for discovery.[1] At a preliminary examination on August 22, Mr. Jones represented Franklin in Bill Nos. 54,438 and 54,574. The court found probable cause in both matters.
The next day, Franklin filed a pro se motion to participate as his own cocounsel in the instant case, Bill No. 54,574. He alleged that Mr. Jones had not responded to his mailed requests for information and could not be reached by phone. He also requested a transfer to the Lincoln Parish Detention Center so he might have access to that facility's law library. On September 15, he filed a pro se motion for a contradictory hearing and a motion to quash, alleging a litany of irregularities in his arrest and search warrants. On September 25, he filed a pro se motion to suppress, contesting the probable cause for his arrest on the June 8 drug sale.
On October 17, 2006, Franklin appeared for a hearing on his motions in the instant case. Franklin stated on the record that he wanted to proceed pro se, with Mr. Jones as his "advisor." The court reiterated to Franklin the perils of self-representation, advising that the choice to forgo counsel "may not be a good thing for you." Franklin persisted in his request to cross-examine witnesses, pick the jury and "having my argument heard in open court." The court granted his motion to represent himself, but later in the hearing reminded Franklin of one special peril: in arguing and examining witnesses he could easily influence the jury's view of his guilt or innocence in a way that he could totally avoid by letting an attorney defend him. Franklin again insisted on proceeding pro se. Finally, the court denied as untimely Franklin's motion to suppress, noting a "high probability" that this was a dilatory tactic. The court cautioned Franklin that his initial request for counsel, followed by requests to proceed pro se, may also have been dilatory.
On October 23, one day before trial, Franklin appeared for more pretrial matters. The court again asked him if he wished to represent himself; he replied that he did. The court stated that Franklin had "the education, intelligence and *392 experience that I don't think that [improper argument or procedure] is going to be much of a problem. Quite frankly, I think, as pro se counsel go, I think you're about as prepared as most I've, any I've seen."

Voir Dire Proceedings
Because voir dire issues are raised on appeal, we will relate the relevant facts from the jury selection process.
On the first day of jury selection, the prosecutor asked prospective jurors their opinions about police methods of investigation in drug cases, specifically whether they thought people who sell drugs would be "careful" and sell drugs only to persons they knew. Franklin objected, arguing the prosecutor was "trying this whole case and setting thesetting the stage for this whole case in getting the jury selection." The prosecutor responded that he was laying a foundation for questions about the use of confidential informants by the police. The court overruled Franklin's objection, ruling that the questions were within the proper realm of voir dire and that the prosecutor could examine the venire members' bias against the state on particular elements of the offense.
Also on the first day of jury selection, one venire member, Patricia Blades, stated that she had a close personal friend in the Lincoln Parish district attorney's office, her brother-in-law worked at the East Carroll Parish sheriff's office, and her brother was "involved in drugs" in East Carroll Parish some 15 years ago. The court asked if this experience would prevent her from being fair and impartial to either the defendant or the state in this case; she replied, "I'm not sure. It depends." On further questioning by the court, she stated, "I guess I would just have to hear everything that the attorneys [said]," and "I can try to be as fairyes."
Questioned by the prosecutor, Ms. Blades agreed that the experience with her brother had no bearing on Franklin, there was a presumption of innocence and the state had the burden of proof beyond a reasonable doubt. Still, she wavered: "Can I put everything aside * * * and not think about everything that happened with, like, my brother and other people I know? I don't know." Also: "But sitting here right now, to give you an honest answer, I cannot honestly say at this very moment. I don't know if I can do that. I will do my very, very best to give himto do right for you and for him."
On questioning by Franklin, Ms. Blades described the town where she lived and worked, with many teenagers in the area and a visible police presence. She agreed with Franklin that "illegally used drugs are a big problem in our society." The record does not show that Franklin posed any more questions about her potential bias.[2]
Franklin challenged Ms. Blades for cause, urging she could not affirm that she would be fair in making her decision. The prosecutor argued that after initial uncertainty, Ms. Blades ultimately stated that she would be fair and follow the law as instructed by the court. The court denied the challenge, noting, "The defendant did an excellent job of rehabilitating Ms. Blades. * * * [N]ot the questions of the court nor the questions of the state but the defendant's own questions." Franklin used a peremptory challenge to excuse Ms. Blades and ultimately used all his peremptory challenges.

*393 Trial and Subsequent Proceedings

The matter proceeded to trial on October 24 and 26, 2006. The state presented the testimony of Dep. Williams, who coordinated the drug buy operation, of Agent Levine, who actually bought the drugs from Franklin, and of two Ruston Police Department officers who established the chain of custody and the lab results. Franklin cross-examined these witnesses and called them, along with other law enforcement officers and the confidential informant, to testify for the defense. Franklin did not testify. As noted, the jury unanimously found him guilty as charged on all three counts.
On November 13, 2006, Franklin filed a pro se motion for new trial alleging that Mr. Jones did not assist him at all at trial. He attached a series of letters he had addressed to Mr. Jones and his own complaint against Mr. Jones filed with the LSBA.
The court held a hearing on all pending motions (Bill Nos. 54,024, 54,438 and 54,574) on January 16, 2007. Franklin appeared with an attorney from the indigent defender office, Rick Candler, who advised the court he had been appointed in Bill Nos. 54,438 and 54,574; Mr. Candler had not yet reviewed the file and asked for a continuance. The court replied that Candler was "the advisor" on the instant case for post conviction purposes. Franklin stated he was prepared to proceed on the motion for new trial, but Mr. Candler requested a continuance, which the court granted. On February 6, Franklin filed a pro se motion for verbatim copies of the trial and preliminary examination transcripts.
At the hearing on the motion for new trial, Franklin appeared with Mr. Candler, who stated he would represent Franklin on the motion, but had not received the trial transcript. The court noted that it had not yet allowed Mr. Candler to enroll as counsel, and he was there only in an advisory capacity; moreover, Franklin knowingly and intelligently waived his right to counsel "after being urged and implored by this court" not to do so. Mr. Candler stated that because Franklin knew the facts better, he (Franklin) should argue the motion for new trial. The court agreed, but warned that the effort to appoint counsel appeared to be another dilatory tactic.
Franklin called Mr. Jones, who described the work he did on Franklin's behalf: they had spoken several times, and he filed a discovery motion. However, Mr. Jones did not recall much about the case, as he had not expected to be called and had not reviewed the file. Afterwards, Franklin delivered a long oral argument, asserting, "I didn't want to represent myself. You know, I wanted to be represented properly."
The court sternly refuted this: "I am sure that I urged, to the point of being rude, because I was concerned for Mr. Franklin that he should have counsel represent him and that he should let me appoint counsel to represent him." The court continued:
He absolutely refused that. It was a calculated decision Mr. Franklin made. He is an intelligent man and he made a calculated decision that would be in his best interest not to have counsel represent him * * *. Mr. Jones, again, wass appointed, not to represent him, but was represented to be with him and offer whatever advice Mr. Franklin asked for. Mr. Franklin was zealous in his advocacy of himself and, therefore, * * * over my strenuous objections that he represent himself. He did have that constitutional right. He lost. * * * The motion for new trial is hereby denied.
*394 At sentencing on February 23, 2007, Franklin delivered a long and impassioned personal history, including his family situation, education and work experience. He admitted selling marijuana to the informant but not cocaine. The court cited a presentence investigation report ("PSI") and recapped Franklin's criminal history and other sentencing factors. The court further noted that Franklin's decision to represent himself was part of a calculated strategy that "in some way you could try to frustrate the court and wouldand could try to be a thorn in the court's side and that some way that might give you something that on appeal would be reversible." As noted, the court sentenced Franklin to three concurrent sentences of 20 years at hard labor, including two years without benefits on the cocaine offenses, and three concurrent fines of $25,000 with a concurrent six months' default time.
The court subsequently denied, without a hearing, Franklin's motion to reconsider sentence. Franklin lodged the instant appeal through counsel with the Louisiana Appellate Project; he has also filed a pro se brief.

Discussion: Waiver of Counsel at Trial
By his first assignment of error, Franklin urges the district court erred in failing to conduct a proper inquiry into his ability and understanding to waive his right of representation by court-appointed counsel before, during, and after trial, and improperly required him to proceed without counsel. He asserts the court never asked if he knew the elements of the charges against him or the possible penalty ranges and did not ascertain his educational level or ability to understand the proceedings and potential consequences, contrary to State v. Strain, 585 So.2d 540 (La.1991). At most, the court expressed its view that self-representation was a "bad idea" for Franklin.
The state responds that Franklin was a competent person of superior intelligence; was properly advised of the dangers of self-representation under State v. Strain, supra; knowingly and intelligently waived his right of counsel; and elected to proceed first with the assistance of counsel, then pro se, and then with the advice of standby counsel.
Both the Louisiana and federal constitutions guarantee a criminal defendant's right to the assistance of counsel. U.S. Const. amend. 6; La. Const. Art. 1, § 13; Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); State v. Brooks, 452 So.2d 149, 155 (La.1984). Nevertheless, a defendant may elect to represent himself if the choice is "knowingly and intelligently made" and the assertion of the right is "clear and unequivocal." Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); State v. Brown, XXXX-XXXX (La.4/12/05), 907 So.2d 1.
A trial court may not force a lawyer upon a defendant when the defendant insists he wants to conduct his own defense and voluntarily and intelligently elects to proceed without counsel; however, he must ask clearly and unequivocally to proceed pro se and make this request in a timely manner. Faretta v. California, supra. He must also be made aware of the dangers and disadvantages of self-representation: the record must demonstrate that he "knows what he is doing and his choice is made with his eyes open." Id., 422 U.S. at 835, 95 S.Ct. at 2541. The accused's technical knowledge, as such, is not relevant to an assessment of his knowing exercise of the right to defend himself. Id.; State v. Brown, supra.
*395 There is no particular formula which must be followed by the trial court in determining whether the defendant has waived his right to counsel. State v. Carpenter, 390 So.2d 1296 (La.1980); State v. Moore, 40,311 (La.App. 2 Cir. 1/13/06), 920 So.2d 334, writ denied, 2006-2267 (La.6/1/07), 957 So.2d 167. Whether a defendant has knowingly, intelligently and unequivocally asserted the right of self-representation must be determined on a case-by-case basis, considering the facts and circumstances of each. State v. Campbell, XXXX-XXXX (La.5/21/08), 983 So.2d 810. The adequacy of a defendant's self-representation and legal competence are not determinative of a valid waiver of counsel; the record made in recognizing the waiver controls. State v. Moore, supra, and citations therein.
Franklin is a college-educated entrepreneur who has owned or operated several diverse businesses in Lincoln Parish. Discovery responses showed that he represented himself in a DWI case in 1985. Significantly, three months before his arrest on the instant offenses, he appeared before the same court for a preliminary examination in Bill No. 54,024 and refused appointed counsel. The court questioned him closely, ascertaining that the waiver was unequivocal, voluntary and intelligent. The court was certainly entitled to carry its perception of Franklin's level of understanding in Bill No. 54,024 into the instant proceedings, which began only months later. See State v. Moore, supra; State v. Gauthier, XXXX-XXXX (La.App. 4 Cir. 9/27/06), 941 So.2d 642.
Admittedly, the court's inquiry in later proceedings was less detailed, not addressing his educational status, experience with the legal system, or sentence exposure. Nevertheless, the record as a whole leaves no doubt that for a layperson, Franklin was unusually sophisticated and articulate in asserting his rights. We share the district court's view that among pro se defendants, Franklin is "about as prepared as any."
Franklin further argues that his request for self-representation was not unequivocal: he initially requested and received court-appointed counsel, Mr. Jones; only after Mr. Jones failed to take "appropriate" action did Franklin ask to serve as cocounsel; and only after the court declined to order Mr. Jones to do anything did Franklin seek self-representation.
As noted, the district court repeatedly warned Franklin of the perils of self-representation. In each colloquy, Franklin showed the sophistication and intelligence to waive his right to counsel knowingly and voluntarily. Undoubtedly, his decision evolved over the course of time, and after trial he regretted it. However, at the hearing on the motion to suppress and to reduce bond, six days before trial, Franklin was positive and unequivocal about representing himself, with Mr. Jones as an "advisor." The record made at the time of the waiver controls the analysis, not the results achieved or belated second thoughts about the decision. State v. Campbell, supra; State v. Moore, supra. The instant record discloses a waiver in accord with the principles of Faretta v. California, supra, and State v. Campbell, supra. This assignment of error lacks merit.

Denial of Counsel Post Trial
By his second assignment of error, Franklin urges that the district court erred in denying his motion to appoint counsel for the hearing on the motion for new trial. Franklin disputes the court's finding that this was another of his "repeated delays" and "subverting justice." The waiver of counsel at trial carries through to subsequent proceedings "unless the defendant expressly requests that *396 counsel be appointed for subsequent proceedings." State v. Carpenter, supra, quoting Arnold v. United States, 414 F.2d 1056 (9 Cir.1969), cert. denied, 396 U.S. 1021, 90 S.Ct. 593, 24 L.Ed.2d 514 (1970). Franklin concludes that he lodged just such an express request.
The state responds that Franklin did not contemporaneously object to the ruling to proceed with the motion for new trial; hence, the issue is waived. La. C. Cr. P. art. 841. In the alternative, the issue on the motion for new trialineffective assistance of counseldid not require transcripts and was adequately presented by Franklin himself.
As a general rule, a defendant has the right to counsel of his choice. State v. Bridgewater, XXXX-XXXX (La.1/15/02), 823 So.2d 877, and citations therein. The assignment of counsel shall not deprive the defendant of the right to engage other counsel at any stage of the proceedings in substitution of counsel assigned by the court. La. C. Cr. P. art. 515. However, the right to counsel and to counsel of one's choice cannot be manipulated to obstruct the orderly procedure of the courts or used to interfere with the fair administration of justice. Wheat v. United States, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); State v. Bridgewater, supra. Absent a justifiable basis, there is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications. State v. Bridgewater, supra; State v. Seiss, 428 So.2d 444 (La.1983).
The issue before the court on the motion for new trial was different from the normal claims of sufficiency and credibility. Franklin claimed that he was "forced" to represent himself at trial. If true, this would have militated in favor of granting a continuance for the benefit of Mr. Candler. In reality, however, Franklin's claim was specious and without substance. The district court took extraordinary steps to convince Franklin to accept representation by an attorney, but Franklin refused. The gist of his motion was that Mr. Jones did not act as his attorney, but the district court correctly observed that this resulted from choices made by Franklin, not by Jones.
Moreover, the court had observed Franklin in these proceedings (as well as those in Bill Nos. 54,024 and 54,438) and intimately understood that he was never denied trial counsel. The court interpreted the motion to appoint Mr. Candler as a dilatory tactic to forestall sentencing. On this record, we cannot say the court abused its great discretion. This assignment of error lacks merit.

Challenge for Cause
By his third assignment of error, Franklin urges the district court erred in denying his challenge for cause of prospective juror Patricia Blades. He contends that at the outset of voir dire, Ms. Blades admitted uncertainty whether she could be fair in her deliberations because her brother had a drug conviction; also, a friend and a relative of hers worked for law enforcement agencies. The district court denied the challenge, noting that "the defendant's own questions * * * did an excellent job of rehabilitating her," but no such questioning ever occurred. Finally, Franklin shows that he used a peremptory challenge to excuse Ms. Blades; because he ultimately exhausted all his peremptory challenges, prejudice is presumed. State v. Lindsey, XXXX-XXXX (La.1/17/07), 948 So.2d 105, and citations therein.
The state responds that under La. C. Cr. P. art. 800, "A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him unless *397 an objection thereto is made at the time of the ruling." The state concludes that Franklin waived the issue by making no contemporaneous objection.
In the situation presented here, a defendant satisfies the contemporaneous objection rule "by stating his grounds for a cause challenge and then by removing the juror with one of his remaining peremptory challenges when the court declines to excuse the juror for cause." State v. Pinion, 2006-2346 (La.10/26/07), 968 So.2d 131; State v. Fairley, 25,951 (La.App. 2 Cir. 5/4/94), 645 So.2d 213 (on rehearing), writ denied, 94-1940 (La. 11/11/94), 645 So.2d 1152. We have therefore considered the merits of the challenge for cause.
Under La. C. Cr. P. art. 797, a defendant may challenge a juror for cause if:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence; * * *
(4) The juror will not accept the law as given to him by the court[.]
A juror's association with law enforcement agencies or personnel will not alone disqualify her from service. State v. Manning, XXXX-XXXX (La.10/19/04), 885 So.2d 1044, cert. denied, 544 U.S. 967, 125 S.Ct. 1745, 161 L.Ed.2d 612 (2005); State v. Hopkins, 39,730 (La.App. 2 Cir. 8/17/05), 908 So.2d 1265, writ denied, 2005-2253 (La.3/17/06), 925 So.2d 541. The inquiry is whether the prospective juror could assess the credibility of each witness independently of her relationship with law enforcement. State v. Gatti, 39,833 (La.App. 2 Cir. 10/13/05), 914 So.2d 74, writ denied, 2005-2394 (La.4/17/06), 926 So.2d 511. The fact that a prospective juror has prior experience with an offense similar to the one being tried is not grounds for removal if her responses to voir dire questions clearly indicate that she would decide the case on the merits. State v. Johnson, 36,014 (La.App. 2 Cir. 6/12/02), 821 So.2d 652, and citations therein. In all cases, the district court has broad discretion in ruling on a challenge for cause. The court's determination will not be reversed unless a review of the entire voir dire shows an abuse of that discretion. State v. Lindsey, supra. The refusal to disqualify a prospective juror on grounds of bias is not reversible if, after further examination or rehabilitation, the juror demonstrates a willingness and ability to decide the case fairly according to the law and evidence. State v. Campbell, supra.
We agree that Ms. Blades's initial statements on voir dire were no ringing assurance of impartiality. We are also somewhat perplexed by the district court's remark that Franklin did an "excellent job of rehabilitating" her; the record simply does not support this. However, on questioning by the court and prosecutor, Ms. Blades agreed that every defendant came to court with "a clean slate." She further affirmed, "Yes, I'll give him the fair [treatment]." While the cold record is perhaps unrevealing, we must defer to the district court, which had the benefit of Ms. Blades's intonation, body language and general demeanor. After a review of the entire voir dire, we cannot say that the district court abused its vast discretion in finding that she had indeed been rehabilitated. State v. Lindsey, supra. This assignment of error lacks merit.

Voir Dire Examination
By his fifth assignment of error, Franklin urges the district court erred in allowing the state to ask prospective jurors *398 how they felt about the use of confidential informants or undercover officers in investigating drug cases. He contends that it is highly improper to ask a potential juror if he would act a certain way in certain circumstances, as this commits him in advance of his verdict. State v. Pedroso, 557 So.2d 455 (La.App. 5 Cir.1990).
The state responds that its questions sought to disclose whether a juror would disbelieve a witness simply because he came from a criminal milieu, and was a proper line of inquiry.
The purpose of voir dire is to determine the qualifications of prospective jurors by testing their competency and impartiality and to assist counsel in articulating intelligent reasons for the exercise of cause and peremptory challenges. State v. Ball, 2000-2277 (La.1/25/02), 824 So.2d 1089, cert. denied, 537 U.S. 864, 123 S.Ct. 260, 154 L.Ed.2d 107 (2002); State v. White, 39,745 (La.App. 2 Cir. 6/29/05), 907 So.2d 228. The scope of voir dire examination lies within the sound discretion of the district court, and its rulings will not be disturbed absent a clear abuse of that discretion. La. C. Cr. P. art. 786; State v. Ball, supra.
The prosecutor asked venire members whether they thought drug dealers were careful in their transactions. Contrary to Franklin's argument, the prosecutor did not ask the prospective jurors how they would act in a certain situation. Instead, he tried to probe their attitude about the use of confidential informants (whom Franklin called "snitches"). The question is analogous to general inquiry about whether jurors would accept the testimony of policemen. State v. Prieur, 294 So.2d 227 (La.1974); State v. Dyer, 95-2368 (La. App. 1 Cir. 10/2/96), 682 So.2d 278, writ denied, 96-2570 (La.3/21/97), 691 So.2d 81. It obviously sought to expose any potential bias and was a proper subject of voir dire. This assignment of error lacks merit.

Timeliness of Pretrial Motions
By his fourth assignment of error, Franklin urges the district court erred in refusing to consider his pro se pretrial motions. He was arraigned on July 18, 2006, and filed motions between August 23 and October 3. He concedes that he missed the 15-day limit for filing pretrial motions set by La. C. Cr. P. art. 521, but urges that because his appointed counsel failed to file any timely motions, the court should have accepted his belated pro se filings. In support, he cites a dissenting opinion in State v. Kimbrough, 432 So.2d 833 (La. 1983). He particularly challenges the court's refusal to consider his motion to suppress, filed September 25, 2006.
The state responds that the motion to suppress was scheduled for hearing on October 17, 2006, only six days before trial was to begin. The dilatory effect of the hearing on the motion fully justified the court in declining to find good cause for a belated filing.
Pretrial motions must generally be made or filed within 15 days after arraignment. La. C. Cr. P. art. 521. "Upon written motion at any time and a showing of good cause, the court shall allow additional time to file pretrial motions." Id. Specifically regarding the motion to suppress, La. C. Cr. P. art. 703 C provides:
A motion filed under the provisions of this Article must be filed in accordance with Article 521, unless opportunity therefor did not exist or neither the defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file the motion was otherwise excusable. The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial.
*399 The state correctly shows that Franklin did not file his motion to suppress until September 25, 2006, over two months after arraignment, and the hearing was held only six days before trial. The motion was untimely on its face and did not allege that either Franklin or his counsel was previously unaware of the evidence he sought to suppress. A lack of communication between defendant and counsel is not grounds to grant an extension of time under Art. 703 C. State v. Young, 37,673 (La.App. 2 Cir. 12/5/03), 862 So.2d 312, writ denied in part and granted in part on other grounds, XXXX-XXXX (La.5/14/04), 872 So.2d 505. The district court viewed Franklin's motion to suppress as yet another dilatory tactic.[3] We perceive no abuse of discretion in disallowing it. This assignment of error lacks merit.

Excessive Sentence
By his sixth assignment of error, Franklin urges the court imposed excessive sentences. Specifically, he contends the court failed to consider the lengthy period from the completion of his last felony probation (March 1994) until the instant offenses (June 2006); his employment history and military service; and the relatively small amount of drugs involved.
The state responds that the district court articulated an adequate factual basis under La. C. Cr. P. art. 894.1 and that the concurrent sentences of 20 years are actually in the midrange and not excessive.
Appellate review of sentences for excessiveness is a two-pronged inquiry. First, the record must show that the sentencing court complied with La. C. Cr. P. art. 894.1. The court need not list every aggravating or mitigating factor so long as the record reflects that it adequately considered the guidelines. State v. Smith, 433 So.2d 688 (La.1983); State v. Woods, 41,420 (La.App. 2 Cir. 11/1/06), 942 So.2d 658, writs denied, 2006-2768, 2781 (La.6/22/07), 959 So.2d 494. When the record shows an adequate factual basis for the sentence imposed, remand is unnecessary even in the absence of full compliance with the article. State v. Lanclos, 419 So.2d 475 (La. 1982). The court is not required to assign any particular weight to any specific matters at sentencing. State v. Quiambao, 36,587 (La.App. 2 Cir. 12/11/02), 833 So.2d 1103, writ denied, XXXX-XXXX (La.5/16/03), 843 So.2d 1130.
The second prong is constitutional excessiveness. A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. State v. Guzman, 99-1753 (La.5/16/00), 769 So.2d 1158. The district court has wide discretion in imposing a sentence within the statutory limits, and such a sentence should not be set aside as excessive in the absence of a manifest abuse of that discretion. State v. Williams, XXXX-XXXX (La.12/13/04), 893 So.2d 7.
The court allowed Franklin to speak at length before it imposed sentence. Franklin expounded on his talents and accomplishments as an insurance adjustor and agent, small business owner, softball *400 coach, church member and father. He admitted selling the marijuana but not the cocaine.
The court then stated that in addition to the instant charges, Franklin stood charged with marijuana and cocaine charges in Bill Nos. 54,024 and 54,438. Citing a previous PSI, the court noted that by his own admission, in October 1987 Franklin "became a dealer of note." In 1990, he pled guilty to possession of cocaine and drew a three-year suspended sentence; shortly after completing his probation, he was arrested for cultivation of marijuana and pled guilty to simple possession. The court described him as "a highly intelligent and articulate man with a magnetic personality" who had diverted these talents to the sale of controlled dangerous substances. Because drug sales appeared to support his personal habit, the court found that criminal activity was likely to recur without correctional treatment in a custodial environment. The court also stated that the evidence of guilt in this case was overwhelming. The court's reasons for sentence were exceptionally well presented, accurate, and fully justified by the record.
The maximum sentences for violations of La. R.S. 40:966 and 40:967 are 30 years' imprisonment at hard labor. The concurrent sentences of 20 years at hard labor were well within the district court's discretion and do not shock the sense of justice. This assignment of error lacks merit.

Franklin's Pro Se Assignments
By his first five pro se assignments of error, Franklin contests his continued detention after July 18, 2006. On that date, Mr. Jones urged a 72-hour violation in Bill No. 54,438, which the district court granted, but Franklin was not released because the state filed the instant charges, Bill No. 54,574. Obviously, the instant appeal does not affect any ruling in a different case not on appeal. Even if it did, an alleged violation of La. C. Cr. P. art. 230.1 is moot after conviction and sentence. State v. Durio, 371 So.2d 1158 (La.1979). Moreover, a 72-hour violation on one charge does not authorize release on other pending charges. State v. Wood, 34,819 (La.App. 2 Cir. 8/22/01), 793 So.2d 441. These assignments lack merit.
By his sixth pro se assignment, Franklin urges the district court abused its discretion in denying his motion for continuance prior to voir dire. He contends he needed more time to review his case. As a general matter, the decision to grant or deny a motion for continuance rests within the sound discretion of the district court; the appellate court will not disturb the decision absent a showing of specific prejudice. La. C. Cr. P. art. 712; State v. Strickland, 94-0025 (La.11/1/96), 683 So.2d 218; State v. Ray, 42,096 (La. App. 2 Cir. 6/27/07), 961 So.2d 607. This case had been set for trial for over a month, and the presentation of evidence was set to begin a mere two days later. The generic claim of inadequate time to review is not a showing of specific prejudice. This assignment lacks merit.
By his final pro se assignment of error, Franklin urges the district court erred in granting his oral motion to waive random case allotment. He argues that the court and prosecutor "influenced, if not encouraged" him to waive an important pretrial right. Notably, at the preliminary examination in Bill No. 54,024, the court advised Franklin of the right of random allotment of future charges and Franklin replied, "It's my desire to have you (Division C) hear the entire case." This is consistent with the felonies-following-felonies rule of La. Dist. Ct. R. 14.1(a). State v. Jones, 41,449 (La.App. 2 Cir. 9/20/06), 940 So.2d 61. There is no abuse of the *401 court's discretion. This assignment lacks merit.

Conclusion
We have reviewed the entire record and find nothing we consider to be error patent. La. C. Cr. P. art. 920(2). For the reasons expressed, James Earl Franklin's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] The state's responses disclosed that Franklin had represented himself in a 1985 case in which he pled guilty to DWI.
[2] The record shows that Franklin asked additional questions of a venire member or members listed in the transcript simply as "prospective juror," but it is not clear that any of these was Ms. Blades.
[3] The pro se motion to suppress mainly contested the validity of the affidavit in support of his arrest warrant. Although it sought to suppress "any evidence arising out of" the sting operation on June 8, 2006, it did not allege that police seized anything as a result of an illegal search.